IN RE ESTATE OF SAMUEL E: LODGE.
FANNIE L. PLOEHN ET AL., APPELLEES, V. CHARLES J. LODGE ET AL., APPELLANTS.

FILED JULY 12, 1932.  No. 28219.

G. E. *Hager* and *M. S. McDuffee,* for appellants.

*Boyle & Koenigstein* and *F. M. Deutsch, contra.*

Heard before Goss, C. J., Rose, Dean, Good, Day and Paine, JJ., and Hastings, District Judge.

Good, J.

This is a proceeding seeking the probate of an instrument purporting to be the last will of Samuel E. Lodge, deceased. It originated in the county court. Fannie L. Ploehn, the proponent, is a sister of decedent. She filed a petition asking the probate of the instrument. Brothers, sisters, nieces and nephews of decedent filed objections to the probate of the instrument, wherein they alleged that Samuel E. Lodge did not execute the instrument; that, by reason of old age and illness, he was incompetent to execute a will, and that the instrument was procured by undue influence practiced by proponent and others. After a hearing in the county court, there was an appeal to the district court, and a trial there had upon the issues as presented by the transcript from the county court, without new pleadings having been filed in the district court. The trial resulted in a verdict and judgment, finding that the instrument was the last will of Samuel E. Lodge and directing that it be admitted to probate. Contestants have appealed.

At the outset of the trial, when the first witness was called, contestants entered a demurrer *ore tenus,* and contended that, since the petition filed in the county court did not allege that Samuel E. Lodge was of sound mind and competent to execute a will, it did not state a cause of action calling for the probate of the instrument. The demurrer was overruled, and this is assigned as error. In *In re Estate of Strelow,* 117 Neb. 168, it was held: "A legatee or devisee who seeks probate of a claimed will carries the burden of alleging and proving, not only that the testator was possessed of authority and capacity to make the will, but also that the instrument is in legal form."

Had the petition been attacked in the county court, no doubt the objection to its insufficiency would have been sustained and the proponent would then have had the opportunity to amend and insert the proper allegations. However, the mental capacity of Samuel E. Lodge was made a direct issue by the contestants, and both parties tried out that issue to the jury. In fact, the greater part of nearly 500 pages of testimony contained in the bill of exceptions relates to the question of the mental competency of Mr. Lodge to make a will. Both sides offered a large amount of evidence upon this particular question. It is possible, although not decided, that, had contestants stood upon their demurrer, the ruling would be held erroneous. Whether the trial court erred in overruling the demurrer *ore tenus* seems to be immaterial, because contestants have not been prejudiced thereby. Both parties tried that issue fully to the jury, and the trial court, by its instructions, placed upon proponent the burden of establishing the competency of Mr. Lodge. The ruling, therefore, if error, was not prejudicial. It is a general rule that a judgment will not be reversed on ground of erroneous ruling that is not prejudicial to complaining party.

Samuel E. Lodge was a bachelor and left surviving him several brothers and sisters and children of brothers and sisters who had predeceased him. He died possessed of 400 acres of land and about $18,000 in personalty. For several years he had lived on one of his farms with his mother. She died in 1921. A few weeks before the mother's death, Mrs. Ploehn, proponent herein, and her two daughters, at the request of Mr. Lodge, came into his home to assist in caring for the mother. After her death, Mr. Lodge requested his sister and her two daughters, to whom he seemed greatly attached, to stay with him, keep house and care for him. This they did until his death. Mr. Lodge suffered from diabetes and some disease of the heart. In December, 1928, he had an attack of influenza which lasted several days, but he recovered to an extent that he was able to be about, attending to or supervising the work of caring

for his live stock. He became quite ill again about the 19th of January, 1929. On the following day his family physician, Doctor Sonneland, was called, and, finding Mr. Lodge in a serious condition, inquired of him whether he had made his will. Ascertaining that he had not, he advised that he do so at once. Mr. Lodge consented. Doctor Sonneland then telephoned to Mr. Fred Deutsch, a lawyer, to go to Mr. Lodge's farm for the purpose of drawing a will. Both Deutsch and Doctor Sonneland visited Lodge on the 21st of January, when the will was drawn. At the time it was prepared, Mr. Lodge was lying upon a lounge or day-bed and after it was prepared he sat on the side of the bed, using a magazine for support, attempted to sign, but apparently was unable to do so. He walked over to a table in the room, and there sat down to sign the will, but, because of weakness and trembling of his hand, it was difficult for him to write his name. Doctor Sonneland inquired if he wanted help and he answered in the affirmative, whereupon Doctor Sonneland took hold of the hand in which he was holding the pen and guided his hand in writing the name "Lodge." In this instrument he devised to Mrs. Ploehn, the proponent, for her lifetime the 240-acre farm on which he resided, with remainder to her children. The 160-acre farm he devised to his sister, Ida Walton, for her lifetime, with remainder to her children. He made one small bequest, and then directed the remainder of his estate to be divided in equal shares among his brothers and sisters, and provided that the children of any deceased brother or sister should take the share that would have gone to such deceased brother or sister.

During the progress of the trial, one Wallace O. Shane, a handwriting expert, was called as a witness to testify relative to the signature of Mr. Lodge to the instrument in question. He was asked, after having examined a number of admittedly genuine signatures of Mr. Lodge, whether there were any discrepancies in the signature on the will and those admitted to be genuine. Thereupon, there was a colloquy between the court and counsel, in

which the court reminded counsel that the handwriting was really not that of Lodge, as his hand was guided by another. The court indicated that it failed to see where the testimony of the handwriting expert would be of any particular value. Subsequently, however, the court excused the jury, the matter was discussed, and Mr. Shane was permitted to testify regarding the signatures. Counsel complain of the remarks of the court and insist that they were prejudicial to the contestants.

We have carefully scrutinized all that was said by the trial court, and we fail to find therein anything that was in any wise prejudicial. It must have been apparent to the jury, as it was to the court, from all the evidence, that Mr. Lodge's hand, although holding the pen, was guided by another in writing the signature to the will. It is so apparent, under such circumstances, that the writing would be dissimilar to that of Mr. Lodge, that any person of reasonable intelligence could not help being aware of that fact. The remarks of the trial court certainly could not have been prejudicial to the contestants.

It is insisted that the evidence is insufficient to sustain a finding that testator had mental capacity to make a will. While there was a sharp conflict in the evidence, the great preponderance thereof tends to show that Mr. Lodge was capable of understanding what he was doing, knew and appreciated the extent and value of his property and knew who were the natural objects of his bounty, and in his will did precisely what he wanted to do. In any event, the question was one of fact for the jury, and their finding upon conflicting evidence is conclusive. Moreover, it appears from the testimony of a number of witnesses that prior to the making of the will Mr. Lodge had stated that it was his intention to leave to his sister, Mrs. Ploehn, and her children the 240-acre farm where he lived, and to his sister, Ida Walton, and her children the 160-acre farm. There is evidence that after he had made his will and had recovered from his illness he told a number of persons that he had made a will and fixed things as he wanted them, and out-

lined to a number of them the provisions that were incorporated in the will.

It is urged that Samuel E. Lodge did not, in fact, execute the will; that is, he did not sign it. The law is well settled that a testator may make his will and have another sign his name thereto at his direction; or he may make a mark which he adopts as his signature, or he may ask another to assist him in writing his signature. From the evidence introduced, no other finding, we think, could be sustained than that Mr. Lodge, himself, intended to sign the instrument as a will, and that he requested Doctor Sonneland to guide his hand in writing the name. This meets the law's requirements.

Contestants argue that the will was procured by undue influence practiced by Mrs. Ploehn and others. There is no direct evidence that Mrs. Ploehn, or any other person, exercised any undue influence to procure the making of the will. Counsel invoke the rule that where one, holding a confidential relation with a testator, receives a substantial bequest or devise under the will, undue influence will be presumed, and it is necessary, in this case, for Mrs. Ploehn to overcome the presumption. The evidence tends to prove that long prior to the making of his will Mr. Lodge had planned to do precisely what he did do in the instrument; that he had stated his intention and purpose to a number of his intimate friends and neighbors. After the will was executed he told a number of them what he had done, and that he had accomplished what he wanted to do. The record shows that the scrivener of the will, Mr. Deutsch, was a stranger to Mrs. Ploehn; that she never saw him until he appeared at Mr. Lodge's home for the purpose of drawing the will. The evidence also shows that Mrs. Ploehn did not request any of the provisions in the will, except that she said "don't forget me," and, at the request of Mr. Deutsch, she obtained some tax receipts so that he could, in preparing the instrument, have an accurate description of the land devised; also that testator suggested and directed all of the provisions in the will. The evidence shows that Mr. Lodge

and Fannie L. Ploehn, her children and his sister, Ida Walton, the principal beneficiaries under the will, sustained toward each other a much closer and more friendly relation than did his brothers and other sisters. In fact, there is evidence in the record tending to show that in his opinion they did not care much for him, and that some of them only visited him at rare intervals.

The will, under the circumstances disclosed, is not an unnatural one. From an examination of the entire record, we think the jury were amply justified in finding that the will was not procured by undue influence. If, under the circumstances disclosed, any presumption existed that the will was procured by undue influence because of the confidential relation existing between Mr. Lodge and Mrs. Ploehn, the jury were justified, from a consideration of all the evidence, in finding that such presumption was overcome. The trial court in its instructions placed upon proponent the burden of showing that the will was free from undue influence practiced by her. All the circumstances disclosed, we think, clearly tend to support the finding of the jury.

It is further argued that the instructions did not place upon proponent the burden of showing that undue influence was not practiced by others, particularly by Doctor Sonneland. The doctor was not a beneficiary under the will. Generally speaking, the burden of proving that a will is procured by undue influence rests upon him who alleges it. Certainly, that would be true as to any other than one holding a confidential relation with the testator, and who is a beneficiary under the will.

Contestants complain of the refusal of the trial court to give to the jury a number of requested instructions. We have examined the instructions requested and those given by the court, and in most instances those given are very similar to the ones requested. The instructions given by the court fully cover every issue presented by the pleadings and supported by the evidence. We find no error in the court's refusal to give the requested instructions.

Complaint is also made of a number of instructions given by the court. We have carefully examined all the instructions given, and, in our opinion, they correctly state the law applicable to the issues and evidence.

It is contended on behalf of contestants that no valid verdict was ever rendered upon which to base a judgment, because, in the absence of the judge, the verdict of the jury was received, read and filed by the clerk of the court, and that, in the absence of the judge, there could be no court.

Section 20-1124, Comp. St. 1929, provides: "When the jury have agreed upon their verdict, they must be conducted into court, their names called by the clerk, and the verdict rendered by the foreman. When the verdict is announced, either party may require the jury to be polled, which is done by the clerk asking each juror if it is his verdict. If any one answer in the negative, the jury must again be sent out for further deliberation."

It is apparent that the statute contemplates that the verdict should be received when court is open for the transaction of business. The record discloses no objection made by counsel for contestants at the time the verdict was received. It does show that exceptions were taken to the verdict, but not to the fact that it was received, read and filed by the clerk in the absence of the judge; nor is this question presented in the motion for a new trial. The point raised was not presented to the trial court for decision and cannot be properly raised for the first time in this court. Furthermore, in the motion for a new trial contestants referred to the verdict; contested the sufficiency of the evidence to sustain it, and in other ways recognized the verdict as having been properly returned. Nothing is presented in the record that shows any prejudice to contestants in the irregular manner in which the verdict was received.

We deem it proper, however, to say that the practice of permitting the clerk of the court to receive the verdict of a jury, in the absence of the judge and when the court

is not in actual, open session, is not to be commended, even though it is done by agreement of the parties, as was apparently done in the instant case. The verdict of a jury should be received only when the judge is present and court is open for the transaction of business.

The record discloses no error prejudicial to the rights of contestants. The judgment is therefore

AFFIRMED.