LOVANE FITZSIMMONS V. STATE OF NEBRASKA.

FILED FEBRUARY 13, 1928. No. 25991.

*C. E. Abbott, J. C. Cook,* and *Rodney S. Dunlap,* for plaintiff in error.

*O. S. Spillman, Attorney General,* and *George W. Ayres, contra.*

Heard before GOSS, C. J., DEAN, DAY, GOOD, THOMPSON and EBERLY, JJ., and PAINE, District Judge.

DEAN, J.

An information was filed against Lovane Fitzsimmons in Dodge county by the county attorney, wherein Fitzsimmons was charged with having maliciously and feloniously shot Earl Foote, October 23, 1926, with intent to kill. The jury found the defendant guilty. Upon his motion for a new trial being overruled, the court imposed a sentence of one year in the state penitentiary. The defendant prosecutes error.

At the outset we are confronted by an issue which is raised by the defendant in respect of objections to the appointment of the Honorable John F. Rohn to assist county attorney Mahlin in the prosecution, for reasons hereinafter appearing. And it is obvious that, in view of the record before us, the issue so raised must control our present decision without reference to the merits other than that contained in the opening paragraph. Before the trial began, objection to the appointment of Mr. Rohn was made. The defendant's motion was overruled and the case proceeded to trial with the result herein above noted.

More than 100 pages of legal cap are devoted to affidavits which have to do with the issue in respect of the appointment complained of. In his affidavit J. C. Cook, defendant's leading counsel, avers that Mr. Rohn is an associate in the firm of Abbott, Rohn & Dunlap, and that this association was then, with affiant, actively engaged in the defense of Fitzsimmons. In support of their argument the defendant's counsel introduced in evidence a photograph of the door leading into the offices of the above-named association on which the following names appeared for about 10 years last past, namely, "Abbott, Rohn & Dunlap, Lawyers," and on the door, immediately below, are the following names: "C. E. Abbott, J. F. Rohn, R. S. Dunlap, J. P. Corbett."

In his affidavit Charles E. Abbott, a practicing attorney at Fremont for 29 years, avers that, three months before the case was called for trial, he was employed to assist Joseph C. Cook, the leading counsel, in the defense of Fitz-

simmons, and that he first found out that John F. Rohn intended to participate in the prosecution from the fact that Mr. Rohn was seated by the side of the county attorney when the case was called for trial, and that, from his viewpoint, "by reason of all the facts, this affiant believes that the participation of said Rohn in said case and his identity with affiant and said Dunlap under said association, and the other facts stated, that the defendant's interests will be seriously prejudiced in said case and that he cannot thereby have a fair and impartial trial. That affiant and Mr. Rohn have been associated together for 15 years; they own all their office equipment jointly and have both joint and separate clients and business matters." Mr. Abbott further avers: "That this affiant expressly states that he does not believe that the said Rohn would knowingly, in the prosecution of the case, take advantage of any information acquired by him in said association, or knowingly do anything unethical or improper." This statement in respect of Mr. Rohn's probity is not challenged in the record. To substantially the same effect, in respect of the merits, is the affidavit of the defendant's leading counsel and two more disinterested persons.

The defendant in his affidavit avers that, on the morning when the case was called for trial, Mr. Rohn seated himself at the side of the county attorney, and that this affiant and some of the lawyers and others present remarked: "Well! the association of Abbott, Rohn & Dunlap is on both sides of this case."

Mr. Rohn in his affidavit avers that he has had office arrangement with Abbott, and that the firm was known as Abbott & Rohn, and later as Abbott, Rohn & Robins, and subsequently was known as Abbott, Rohn, Robins & Dunlap,; that no partnership existed between Abbott and affiant except as to joint ownership of furniture, equipment, and the library and also "the business coming to said firm from and over foreign connections and in addition to that certain old matters which had not been completed;" that with the above exceptions the affiant and Abbott and

Dunlap have practiced separately to all intents and purposes; that they have not shared in any of the fees or profits of their business "except as might be arranged in certain specific cases, the same as arrangements might be made between attorneys occupying separate and distinct offices;" that the partnership between himself and Abbott has not been completely dissolved because they have not agreed on the value of the joint office equipment "and certain foreign connections," and that "it has always been the practice that only the party wanted answer the telephone or listen in on the conversation, and this affiant has scrupulously observed said practice during all of this time and believes that the said Charles E. Abbott and said Rodney S. Dunlap have also scrupulously observed said practice;" that long before the trial affiant announced in open court that he and Abbott were no longer operating under a partnership agreement, but merely "under a loose office arrangement and association;" that separate books were kept; that while affiant and Abbott and Dunlap have generally not appeared on opposite sides of law suits, about two months before the trial of the present case affiant was on one side and Abbott and Dunlap on the other side; "that he did not know for certain that either Mr. Abbott or Mr. Dunlap had been retained" to assist in the defense of Fitzsimmons until very recently; that no conversations were carried on by either Fitzsimmons or Cook or Dunlap or Abbott with affiant or in his hearing concerning any matters connected with the Fitzsimmons case; that he did not know definitely until the case was called for hearing that he would be appointed or that his assistance would be asked in the prosecution of the case.

In view of the facts disclosed by the record, we cannot lend our approval to the participation of Mr. Rohn in the prosecution of the defendant. An association of persons, such as the record discloses Abbott, Rohn & Dunlap are shown to have been, cannot, under our practice, divide their forces and permit one member of the association

to take one side of a lawsuit, either civil or criminal, and the other member or members take the opposite side. To do so would be altogether out of harmony with the age old ethics of the profession, and, of course, it cannot be sanctioned by this court. Such conduct would be far removed from the bounds of propriety and honorable conduct in the practice of the law and would lead to intolerable abuses. And in a criminal case it would be unfair to the defendant and unfair to any state or any government where a fair and impartial trial is one of the constitutional guaranties.

We do not think the defendant was fairly tried. It is an elementary proposition of our criminal jurisprudence that every person accused of crime shall have a fair and impartial trial; nor shall he be deprived of life, liberty or property without due process of law. Both the federal Constitution and our state Constitution contain the above guaranties. And it is one of the boasts of Anglo-Saxon civilization that every man, no matter what his estate or condition, shall have an impartial trial when he is charged by the state with an infraction of the criminal code. *Coxbill v. State,* 115 Neb. 634.

The judgment of the district court is reversed and the cause is remanded for further proceedings consistent with the views expressed herein.

REVERSED.

GOOD, J., dissenting.

I do not think there was prejudicial error in the appointment of Mr. Rohn to assist the county attorney in the prosecution of this action. The record discloses that Mr. Abbott, of counsel for the defense, and Mr. Rohn had been copartners in the practice of law; that the partnership had been practically dissolved, but not completely so. It seems that, so far as their law libraries, furniture and certain old business were concerned, the partnership continued; that, as respects new business, it was dissolved. It appears that even some months prior to the appoint-

ment the two had appeared on opposite sides of a case in the same court, in which the appointment was made. There is no claim that the firm of Abbott, Rohn & Dunlap was employed by defendant, only that Abbott was so employed by him. It does not appear that Mr. Rohn, who was appointed to assist in the prosecution, was ever consulted by the defendant or ever consulted by either of defendant's counsel, or that defendant and his counsel ever consulted together in the presence of Mr. Rohn. No confidence was reposed in him by defendant or his counsel; therefore, no confidence could be violated. I fail to see wherein defendant could have been prejudiced by the appearance of Mr. Rohn as assistant to the prosecutor. If the trial was otherwise fair and no prejudicial error in the trial occurred, why should one who has been adjudged guilty escape his just deserts, and why should the state be put to the expense of another trial when justice has been fairly administered?

I do not wish to be understood as commending the appointment of Mr. Rohn as an assistant prosecutor, under the facts disclosed, but I utterly fail to see where defendant was prejudiced by such appointment and think that the judgment of conviction should not be reversed upon that ground.