IN RE ESTATE OF CHARLES STRELOW.
FRANK C. SCHULTZ ET AL., PROPONENTS, APPELLANTS, V.
ROBERT STRELOW ET AL., CONTESTANTS, APPELLEES.

FILED JUNE 13, 1928.   No. 25662.

*Wilmer B. Comstock* and *M. L. Poteet,* for appellants.

*Meier & Meier, Robert R. Hastings* and *Henry J. Beal, Jr., contra.*

Heard before GOSS, C. J., ROSE, DEAN, THOMPSON, EBERLY and HOWELL, JJ., and REDICK, District Judge.

THOMPSON, J.

This is an appeal had from a judgment entered on a verdict returned by the jury in the district court for Lancaster county, denying probate to an instrument claimed by proponents, appellants herein, to be the last will and testament of Charles Strelow, late of such county, dated December 30, 1925, and allowing probate to a purported will of such Strelow of the date of July 13, 1909, presented by the contestants, appellees herein.

The judgment of the trial court is challenged by way of numerous claimed errors presented by the motion for new trial, by the briefs and motions filed in this court, and by the argument in open court. However, from a review of the entire record, we have concluded to give consideration to but four thereof, to wit: (a) Did the trial court err in overruling the motion of proponents to strike from contestants' answer that part thereof relating to the 1909 will, or in admitting evidence respecting the same, or in granting the probate thereof? (b) If error was thus committed, were proponents thereby denied a fair trial as to the 1925 will? (c) Did the trial court err in giving instruction 17 on its own motion? (d) Did the trial judge commit reversible error by his statement, in the presence and hearing of the jury, that he believed the testimony of one of contestants' witnesses, upon a disputed point, to be true?

In our consideration of these errors, it becomes necessary to set forth some explanatory facts evidenced by the record. Charles Strelow and Theodore Strelow were bache-

lor brothers, who became individually owners in fee of certain adjoining lands in Lancaster county, which they respectively farmed and received the usufruct thereof. They were hard-workers, and frugal. They lived and strove for each other. On July 13, 1909, each executed his last will and testament, in due and legal form, by means of which the one became the sole legatee of the other. The will of Charles, so far as material for our consideration, is as follows:

"First. I give, devise and bequeath to my brother, Theodore Strelow, all the property, real and personal, * * * which I may own or possess * * * at my death. Second. I hereby appoint my brother, the said Theodore Strelow, the executor of this my last will and testament, and request that no bond be required of him as executor."

Theodore's will was the same as that of Charles, except the names of the testator and legatee were reversed. These wills were then by them deposited with the county judge of such county for safe-keeping. Theodore died on November 5, 1925, never having been married, his father, mother, brothers and sisters having each and all preceded him in death, save his brother Charles. On November 27, 1925, one Robert R. Hastings was appointed guardian of the person of Charles Strelow, and the First Trust Company, a corporation of Lincoln, was appointed guardian of his property (as said in the briefs, owing to his extreme old age—80 or 81 years). On December 30, 1925, Charles Strelow executed, in due and legal form, the will in controversy herein, which, so far as material, provides in substance as follows: The first paragraph contains the usual direction authorizing the executor to pay the funeral expenses, debts, etc., out of his personal property. The second devises to the children of his sister Rike the sum of $5,000, to be divided share and share alike. In the third he states that he has not forgotten, nor been unmindful of, other children of certain of his brothers and sisters, but that it is his will and intention that they do not take or have any of his estate. The fourth is as follows:

"I give devise and bequeath to Albert L. Schultz, Henry F. A. Schultz and Frank C. Schultz, the sons of my old friend and neighbor Albert Schultz, the rest, remainder and residue of my property, both real and personal of every kind and nature wherever situated possessed by me at my death share and share alike."

In the fifth he appoints the last above named legatees (appellants herein) as his executors, and revokes all former wills by him made. On January 21, 1926, Charles died, never having been married, the death of his father, mother, and all brothers and sisters having preceded his demise. There were left surviving the nephews and nieces (contestants of the 1925 will and proponents of the 1909 will), together with the nephews and nieces named as legatees in the 1925 will, but no other kin. Shortly after the death of Charles, the above named Schultzes, legatees and suggested executors, jointly applied to the county court to have such will admitted to probate, the petition being in usual form. To this application objections were filed by appellees herein, being all of the other nephews and nieces of such Charles Strelow except those named as legatees in the 1925 will, a synopsis of such objections being in substance: That the testator, Charles Strelow, was at the date of the execution of the will 82 years and some months' old; that he was not possessed of a sound and disposing mind, and was without testamentary capacity; that he had been adjudged to be senile by the commissioners of insanity of such county, and was at the time of the execution of the will under guardianship, having been found incompetent to care for himself or his property; that the contesting nephews and nieces were his next of kin (Theodore Strelow, the legatee named in the 1909 will, having died prior to the death of Charles) ; that such purported will of 1925 was obtained through the exercise of undue influence exerted over him by one O. B. Clark and the proponents Schultz; that the true last will and testament of such Charles Strelow, deceased, was made in the year 1909 (being the will of that date hereinbefore referred to) ; and objectors then, in the

usual form of a petition praying for probate of a will, offered such 1909 will for probate, and prayed that the 1925 will be disallowed. The case came on for hearing February 10, 1926, on the petition of the legatees Schultz, evidence was taken, and judgment entered denying probate of such 1925 will, and as to it the case was dismissed. The case was then adjourned as to the will dated July 13, 1909, and on February 24, 1926, judgment was entered admitting to probate as the last will and testament of said deceased the 1909 will, and granting the administration of the estate to the First Trust Company of Lincoln as administrator with will annexed; to all of which the Schultzes excepted. From the judgment disallowing the 1925 will probate, the Schultzes appealed to the district court for Lancaster county, which appeal was docketed as case number 92-115; and they also appealed from the judgment granting probate to the will of 1909, which appeal was docketed as case number 92-151. After the two cases were thus docketed, and the petition of the Schultzes, in usual form, was filed in case 92-115 praying for the probate of the 1925 will, the nephews and nieces interposed a motion in which the court was asked to consolidate case 92-151 with case 92-115, which motion, after due consideration, was overruled. On the same day an answer was filed by the contestants, similar if not identical with that filed in the county court, and, as in the county court, prayed that the 1925 will be denied probate, and the 1909 will be admitted to probate. The case was then called for trial to a jury, and the proponents of the 1925 will interposed a motion at the trial to strike from the answer of contestants the second clause thereof, to wit, all that part referring to and asking probate of the 1909 will, for the reason, in substance, that the same was redundant, immaterial, and under the record incompetent for any purpose. This motion was overruled, and in the further progress of the trial the nephews and nieces (proponents of the 1909 will), over the objections of the proponents of the 1925 will, were permitted to prove the due execution of the 1909 will, and to introduce it in evidence.

During the trial Dr. Zimmerer was sworn and examined on the part of these contestants as to the competency of Charles Strelow to excute the 1925 will. On direct examination the doctor had detailed at much length the mental and physical condition of such Strelow at the time and before the 1925 will was executed, and was being cross-examined by the attorney for the Schultzes in reference thereto, and was by such attorney asked the following question: "Well, how much like that, how near are you going to stick to what you said in direct examination and how much are you going to change it?" To which he answered: "Your Honor, I am trying to tell the truth as near as I can, and I haven't got any transcript of everything I said in the last six months." Thereupon the trial judge remarked: "I think you are telling the truth, Doctor, I understand that. Be patient and answer the questions as nearly as possible."

Considering first challenge (a): Did the trial court err in overruling the motion of proponents to strike from contestants' answer that part thereof relating to the 1909 will, or in admitting evidence respecting the same, or in granting probate thereof? As we have seen, these Strelow brothers remained single during their natural lives; that as to Theodore, his parents, brothers (except Charles), and sisters had each and all preceded him in death; that those nearest related to Theodore by blood at the time of his death, other than his brother Charles, were the contestants, nephews and nieces, and those nephews and nieces designated as legatees in the 1925 will (executed at a date subsequent to the death of Theodore). It has been seen further that the provisions of what we have referred to as the 1909 will of Charles limit the bequest as well as the suggested executor to Theodore Strelow. Thus, we must determine what effect the death of Theodore, sole legatee and devisee named in the 1909 will, had on such instrument. Did it, under the facts disclosed, lapse, or did it remain in full force? The right of one who owns property, either real or personal, to dispose of the same by will, is a limited right, created and controlled by legislative enactment, as

is the right of one to take and hold under and by virtue of such will. Hence, a legatee or devisee who seeks probate of a claimed will carries the burden of alleging and proving, not only that the testator was possessed of authority and capacity to make the will, but also that the instrument is in legal form, and that he as such legatee or devisee, under the law as well as under the will, is entitled to the legacy or devise. These burdens as to the 1909 will are imposed upon the appellees herein, and must be by them met. It may be admitted (but not determined), for the sake of our present consideration, that at the time of the execution of this instrument Charles Strelow was possessed of every legal qualification necessary to excute the same, and that it was, up to the time of the death of Theodore Strelow, his last will and testament; and that, if Theodore had outlived Charles, he would have become the sole legatee and devisee of his brother's estate. But, as we have seen, Theodore was first to die. This situation is met by section 1269, Comp. St. 1922, which provides:

"When a devise or any legacy shall be made to any child or other relation of the testator, and the devisee or legatee shall die before the testator, having issue who shall survive the testator, such issue shall take the estate so given by the will in the same manner as the devisee or legatee would have done if he had survived the testator, unless a different disposition shall be made or directed by the will."

The purpose of this section is to prevent the lapsing of the legacy covered by the will in case of the death of a legatee who is a "child or other relation of the testator, and the devisee or legatee shall die before the testator, having issue." Thus, such issue take as substituted legatees or devisees, and not as heirs. The legal meaning of the word "issue" as in this section used, considered in connection with the other provisions of the chapter of which this section forms a part, is controlling. At common law the death of a specifically named legatee or devisee prior to that of the testator caused the legacy to lapse. To prevent a general application of this rule, as we construe this chapter,

the legislative body was impelled to include in such chapter the section in question, thus removing from the operation of such rule a devise or legacy to a child or other relation of the testator, who dies before the testator and leaves issue. It will be further noticed that the devise must be made to a child or other relative, thus requiring the testator to select the child or relative and so indicate by his will the person to whom the word "issue" is to attach. The foregoing constrains us to conclude that the legislative intent and purpose can best be conserved by our holding that the word "issue," as used in the section of the statute under consideration, means offspring of the named legatee or devisee, issue of his body, and lineal descendants of such offspring. Applying the law as thus determined to the facts in this case, it is shown by contestants' pleading, as well as by the bill of exceptions, that Theodore died without issue, that he was the sole legatee and suggested executor named in the 1909 will, and that such will did not contain a clause revoking any former will. Therefore, by reason of the death of Theodore Strelow, the 1909 will was bereft of its every intended usefulness, and by its own terms had finished its purpose, had lapsed, and was without force or effect. Hence, that part of contestants' pleading referring thereto did not present an issue, was redundant and immaterial matter, and proponents' motion to strike the same, and the objections to the introduction of evidence in regard to such will, as well as the objection to the introduction of the instrument itself, should each and all have been sustained, and prejudicial error was committed by the trial court in not so ruling.

Having thus determined, we will state as to challenges (b) and (c), that the sinister influence of this incompetent evidence regarding the 1909 will on the jury, in its consideration of the issues which were presented by proponents' petition praying probate of the 1925 will, and the answer of contestants deleted of that part thereof directed to the 1909 will, must have been of such potency as to deny to proponents of the 1925 will a fair trial. Therefore, the

trial court committed reversible error in permitting consideration by the jury of the 1909 will, and the evidence relating thereto, either separately or in conjunction with their consideration of the 1925 will. It follows that, under this record, the jury should not have been permitted to consider other than the 1925 will, hence instruction 17 was not pertinent to the issues, and was prejudicial.

. Considering now challenge (d): Did the trial court commit prejudicial error in making the statement heretofore quoted respecting the testimony of Dr. Zimmerer? As to this, it is sufficient to say that under our practice the jury are the sole judges of the credibility of the witnesses, and the weight to be given their testimony. Hence, it is our conclusion that such remark made by the trial judge was without the province of the court, and was erroneous and prejudicial. *Edwards v. Cedar Rapids*, 138 Ia. 421. In 2 Hyatt, Trials, sec. 1051, the rule is thus succinctly stated:

"The trial judge should scrupulously refrain from remarks or conduct tending or calculated to influence the minds of the jury. This is due to the parties as well as the jurors. The function of the jury is to determine the truth of the controverted issues from the competent evidence produced in their hearing, and the law as given them by the court, and that function should be kept before them from the beginning to the end of the trial, and there should be no departure from this standard by the court in any manner whatsoever; by remarks touching the management of the case by counsel, and reflecting upon their conduct in such management or otherwise; or upon the character of a witness, or the weight and credibility of their testimony."

Our attention has been called to a claimed error involving the question: Was it legal and ethical for an attorney of contestants (nephews and nieces) to appear as such, or to testify to other than formal matters in their behalf at the trial, under the facts disclosed? This challenge was not presented to the trial court, and neither was it presented in the briefs or motions filed in this court, and was

not called to our attention until at the oral argument. Thus, the question is not before us for determination. However, as to such challenge it might be well to state: The testimony of this witness given at the trial covers 86 pages of the bill of exceptions, details of which need not be given, further than to say that they embrace a disclosure of the acts and confidential relations and conversations had by and between Charles Strelow as client and such witness as his attorney. This relationship, the record shows, existed uninterruptedly from the 10th day of November, 1925, to the 15th day of December of that year, and, as detailed in evidence, served as a forceful factor in the consideration by court and jury of the mental capacity of Strelow to execute the will of December 30, 1925, as well as his mental and physical ability to resist the undue influence of designing persons, if such there were, in the making of said will. It is elementary that one desiring our consideration of claimed errors of the trial court must first have presented the same to such inferior tribunal. However, notwithstanding this rule, it is equally elementary that it is an inherent duty devolving upon this, as well as the *nisi prius,* court to support the ethical standing of the bar by impressing upon its members the duty of holding as sacred that confidence which should and must ever exist between attorney and client. Hence, as this case may be tried again, attention is called to section 8835, Comp. St. 1922, and *In re Estate of Bayer,* 116 Neb. 670. Also, see opinion in *Fitzsimmons v. State,* 116 Neb. 440.

The other claimed errors are not likely to again occur if a retrial is had, hence, owing to the length of this opinion, they are left undetermined.

The judgment of the trial court is reversed in its entirety, and the cause remanded for further proceedings in harmony with the opinion.

REVERSED.