IN RE ESTATE OF ALFRED OTWAY WIRSIG.
MABEL C. WIRSIG, APPELLEE, V. LILLIAN WIRSIG, APPELLANT.

FILED JANUARY 30, 1935. No. 29135.

*Davis & Vogeltanz,* for appellant.

*Charles C. Larsen* and *John W. Delehant, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, PAINE and CARTER, JJ., and CHAPPELL, District Judge.

GOSS, C. J.

Lillian Wirsig, mother of deceased, has appealed from a judgment of the district court construing a will in favor of Mabel C. Wirsig, wife of deceased, and ordering the estate distributed as so construed. The county court had construed the will otherwise and the wife had appealed to the district court.

The paragraph of the will so construed reads as follows:

"First: I hereby devise and bequeath all of my personal property and all of my real property of any nature or kind whatsoever and wheresoever found, with the exception of twenty dollars in cash ($20.00)."

In the second and third paragraphs the testator bequeathed "to my beloved mother" (without otherwise naming her) and "to my beloved sister Alpha L. Troxel," respectively, ten dollars each.

Everett Satterfield was permitted to testify that he drew the will for testator on October 4, 1932, the day it was executed. The witness was directed by the testator to draw the will devising and bequeathing all testator's property, save the two ten dollar bequests, to Mabel C. Wirsig, wife of testator, and under those instructions the witness drew the will in evidence. He was one of the subscribing witnesses. Timely objection was made to the competency of the scrivener to testify to the conversation with and directions of the testator, but the trial court

overruled the objections with the observation that he would reserve decision of that point until the close of the case.

In the final journal entry the court overruled the objections of Lillian Wirsig to this testimony, though stating: "This contention seems to be in accordance with the general rule for the introduction of evidence in such cases. We think it doubtful whether the rule should be applied in this case. Here the omission was entirely the oversight of the scrivener and so appears from the language of the will itself. The evidence does not seek to contradict or vary the terms of the will. It does not attempt to prove what the understanding of the scrivener was as to the intention of the testator. It merely details what instructions were given by the testator and that the failure to carry out the instruction to insert the name of the wife, as devisee, was solely the mistake and omission of the scrivener. * * * Conceding, however, that the evidence of the scrivener was incompetent and should not be considered, the court is of the opinion that the language of the will itself, when read in the light of the surrounding circumstances and with reference to the situation of the parties, is sufficient to justify the conclusion that it was the testator's intention to leave the residue of the estate to his wife, Mabel C. Wirsig."

The "surrounding circumstances" referred to by the trial court are that the testator had no other near relatives than his mother, his sisters, and his wife with whom he was living, and that he "undertook to dispose of his whole estate." The trial court's journal entry cites on this point the case only of *Herter v. Herter,* 97 Neb. 260, and quotes only the second point in the syllabus thereof: "The object and purpose of a court in construing a will is to carry out and enforce the intention of the testator, as shown by the language of the will, and considering the circumstances under which it was made." There the will was evidently written by the testator and was very informal. It was so construed as to permit two grandchildren who had been

mentioned in the will to participate, with others named, in the distribution of two tracts of land, from which the decree had excluded them. The will specifically bequeathed all the personal estate to the widow and two living children of the testator. As to the two tracts of land the will (which was written in the second person) made this reference only: "The eighty acre farm in section twelf (Grand Pr.) you get in comp, and make the best of it. The rent you will pay to Mother as long as she lives, or as long as she wants it. The farm in Hitchcock county you get in comp also and make the best of it." The court held that one of the tracts was 80 acres in Grant precinct, Lancaster county, that the expression "comp" meant "company," that the intention to dispose of all his property by the will was manifested by testator, and that the two children of a deceased son were included in the "comp" and were included in the description "you get." The decree was therefore modified so as to allow them to participate in the distribution of this land. In other words, the decision was arrived at by a construction of the will "from its four corners" aided by the surrounding circumstances. In no sense were these children imported into the will purely by parol evidence naming them as devisees; and the learned trial court erred in taking *Herter v. Herter, supra,* as authority that parol evidence may be considered in deciding that a will may be so construed as to make one a devisee under a will entirely omitting him by name *or by any other description.* It is doubted if authority can be found anywhere authorizing a court so to construe a will in such circumstances as in the instant case.

Section 30-205, Comp. St. 1929, requires all wills (except nuncupative wills mentioned in the next section) to be in writing, signed by the testator (or by some person in his presence and by his express direction), and subscribed in his presence by two or more competent witnesses.

"Patent ambiguities cannot generally be resolved by

parol; but as to such ambiguities the will must be regarded as insensible. Parol evidence, therefore, is inadmissible to prove what is meant by a legacy to '————.' " 2 Wharton, Law of Evidence (3d ed.) sec. 1006.

"Parol proof of mistake is usually inadmissible to correct a will. In contracts there is a distinction in this respect, arising from the fact that a scrivener's mistake is often the mistake of the agent of both parties, and therefore in such cases imputable to both. But in wills, the scrivener can be in no sense the agent of the legatees or devisees whose interests are affected by his supposed blunder, and to them, therefore, can such blunder be in no sense imputable. The mistake, therefore, if there be such, is one of the testator, or of the scrivener adopted by the testator; and to let the will be overridden by parol proof of such mistake would be to subordinate that which the testator declares to be his last will to something which he has not so sanctioned, and which passes through the treacherous medium of parol." 2 Wharton, Law of Evidence (3d ed.) sec. 1008.

"Evidence as to the intention of a testator separate and apart from that conveyed by the language used in the will is not admissible for the purpose of interpreting the will. Extrinsic evidence cannot be heard to alter, detract from or add anything to the provisions of a will, or to explain or contradict its contents, even though the consequences may be the total or partial failure of the testator's intended disposition. Parol evidence is not admissible to show that the testator meant one thing when he said another, or to show an intention not expressed in the will itself, or to aid in making a will which the testator intended to but did not in fact make. This rule is applied especially where the language of a will is plain and unambiguous. However clearly an intention not expressed in the will may be proved by extrinsic evidence, the rule of law requiring wills to be in writing stands as an insuperable barrier against carrying the intention thus proved into execution." 28 R. C. L. 268, sec. 243.

A testator, after providing legacies for her children left "all the rest, residue and remainder of my *personal estate* (italics ours) to my husband." At her death her personal estate was valued at $4,729, and her real estate at $15,500. In a suit to construe this residuary clause the trial court provisionally admitted parol evidence for the advice of the supreme court of errors showing that husband and wife had made mutual wills and had instructed the scrivener of both wills, including the one in question, so that, with the exception of the legacies to the children, the real estate as well as personal property should go to the surviving spouse. It was held by the supreme court of errors of Connecticut that this evidence was inadmissible to include the real estate in the residuary clause and it was distributed as intestate estate. The opinion is supported by an unbroken line of decisions of that court. *Stearns v. Stearns,* 103 Conn. 213.

A very similar situation arose in Iowa and was the subject of an opinion by Judge Deemer. The testator devised an undivided one-fifth of specifically described real estate to his five daughters and gave "insignificant bequests" to each of his two sons. Later a contest arose between some of the daughters and the two sons. The trial court held with the daughters to the effect that the real estate passed to the daughters under the will. The supreme court reversed the judgment, holding "that the will gave testator's daughters collectively only one-fifth of the real estate described thereby, and as to the other four-fifths of such real estate testator died intestate." The judgment awarded the appellant son his one-seventh of the land not devised by the will and gave him four thirty-fifths of the land. In the third point of the syllabus it is said: "Where there is no ambiguity or uncertainty in a will, testator's intent must·be gathered from the will itself, and parol evidence is only admissible for the purpose of affording light whereby what is in the will may be understood and applied, and cannot be received to give the will operative elements, language, or provisions, nor to correct a mistake

in the will or to make a new will for the parties." *Gilmore v. Jenkins*, 106 N. W. 193 (129 Ia. 686).

Citations could be multiplied showing the application of the rules in the same manner as heretofore exemplified. There seems to be no question as to the correctness of these decisions and that, therefore, the trial court erred in holding that the land passed to the appellee under the will. There can be little doubt, from the fact that testator and wife lived together, that she was the natural object of his bounty and that he should have devised the real estate in question to her. Probably he intended to do so but, through the fault of the scrivener, did not. However, these questions cannot be left to speculation or to an otherwise worthy and humane impulse to make for him the will which he should have made or intended to make. But this we are unable to do in this instance without leveling the barriers to fraud and perjury in a multitude of cases to follow adoption of the rule contended for by appellee in this case.

The rule is different where there is any description in the will in any wise referring to the beneficiary, as, for example, "wife," "son," "daughter," or other relative. Where there is sufficient reference in a will to identify the beneficiary—if, for example, a legacy is given by a testator to his "brother John," and it appears from parol or otherwise extrinsic evidence that he had but one brother whose name was James—the latter may be permitted to take, because the description of "brother" in such case would alone be sufficient, and the name may be rejected as surplusage. 28 R. C. L. 220, sec. 181. There must be a basis, found within the four corners of the will, upon which to place an interpretation, before extrinsic evidence may be used to aid the discovery as to what the testator really intended.

Where a testator, in a clause of his will devising real and personal property, omits the beneficiary either by name or by any other reference, and nowhere in the will is there any means of discovering the identity of the in-

tended beneficiary, parol or extrinsic evidence cannot be received to determine that fact.

The judgment of the district court is reversed, with directions to enter a decree in harmony with this opinion; that is, providing for the distribution of the estate, other than the two valid bequests, as intestate estate.

REVERSED.