WILLIAM WOELK ET AL., APPELLEES, V. WALTER J. LUCK-HARDT, ADMINISTRATOR, ET AL., APPELLANTS.

277 N. W. 836

FILED FEBRUARY 18, 1938. No. 30156.

*Harry R. Ankeny,* for appellants.

*H. J. Whitmore* and *William Niklaus, contra.*

Heard before GOSS, C. J., ROSE, DAY, PAINE, CARTER and MESSMORE, JJ., and MUNDAY, District Judge.

MUNDAY, District Judge.

This is an appeal by Walter J. Luckhardt, administrator with will annexed of the estate of John Luckhardt, deceased, and others, from an order of the district court for Lancaster county in a proceeding in equity, wherein the district court as an appellate court reversed and set aside an order of the county court directing said administrator to make a partial distribution of the personal property of said estate.

John Luckhardt died testate in Lancaster county, Nebraska, in March, 1935. His last will and testament was made in 1920. The sole legatee and executrix of said will, Amalia Luckhardt, wife of John Luckhardt, died in 1934. Before her marriage to Luckhardt she had previously been married and had two sons by the former marriage, who are the appellees herein. By her marriage to John Luckhardt she had four children. The will was offered for probate by petition in the usual form by Walter J. Luckhardt. The petition, among other things, set out the death of the aforesaid executrix and legatee and named the six children as interested parties. The county court admitted the will to probate and appointed Walter J. Luckhardt administrator with will annexed. No appeal was taken from this order. So far the proceedings were amicable. In April, 1935, said administrator filed an inventory showing the amount of the assets of the estate as $111,505.76. Later said administrator filed a petition in the county court praying for an order permitting him to make a partial distribution of the personal assets of the estate to the four children of John and Amalia Luckhardt. The appellees, William and Samuel Woelk, then filed a petition in the county court asking that said distribution be made to all the six children of said Amalia Luckhardt as substitutionary legatees under said will. The question was squarely raised in the county court, whether all six children of Amalia Luckhardt were entitled to participate in the distribution of the estate, or only the four children of Amalia Luckhardt, who were the issue of her marriage

with John Luckhardt. The county court ordered the distribution to the four children of John Luckhardt. The appellees herein appealed to the district court, where the cause was tried on the same pleadings as in the county court. The district court reversed the order of the county court and held that each of the six children of Amalia Luckhardt was entitled to share equally in the distribution. The four children of John and Amalia Luckhardt with said administrator have appealed to this court.

The appellees contend in substance the decree of the district court should be affirmed because (1) the order of the county court admitting the will to probate and appointing Walter J. Luckhardt as such administrator inherently found that the will in question made a disposition of all of the estate of the deceased to the six issues of Amalia Luckhardt, share and share alike, as substitutionary legatees and devisees in the place of Amalia Luckhardt, the sole legatee and devisee named in the will, and that the question as to who shall take the estate of the testator thus became a matter finally adjudicated before the commencement of these immediate proceedings; (2) that if the question of whether the six children of Amalia Luckhardt were substitutionary legatees and devisees and entitled to take the estate of the testator under the will was not finally determined by said order of the county court referred to under (1) above, the said six children were independently substitutionary legatees and devisees in the place and stead of Amalia Luckhardt, (a) because it was the intention of the testator by the terms of his will that they would thus be takers in her place and stead, and (b) because by force of the statute, section 30-229, Comp. St. 1929, Amalia Luckhardt was a relation of the testator, and her six children, as her issue surviving the testator, would take the estate of the testator by operation of the statute, share and share alike.

The appellees devote considerable space in their brief to the first proposition above. They assert that the judgment should be sustained because, in substance, to distrib-

ute the estate only to the issue of John and Amalia Luckhardt is a collateral impeachment of the prior proceedings of the county court in admitting the will to probate and the appointment of said administrator; that for the four children of John Luckhardt to take all the property is inconsistent with the inferential finding that followed the probate of the will, viz., that there is property to be disposed of by the will.

They also contend that such implied and inferential finding is necessary, for the decree of probate has nothing else to support it, and therefore the appellants are estopped to assert there was no property to pass by the will and that the question as to who shall take the property under the will is *res adjudicata.*

The appellants have not favored us with a brief on the propositions last above set out. The county court made no special mention of this contention as to estoppel and *res adjudicata* in its decree, nor did the district court, although the latter court made a very full and detailed finding as to the intent of the testator and as to its construction of section 30-229, Comp. St. 1929, and as to the meaning of the word "relation."

*In re Estate of Strelow,* 117 Neb. 168, 220 N. W. 251, is cited by appellees. In this case there was no clause revoking a former will as in the instant case. In the instant case the will provides: "And I do hereby revoke all and every former will by me made." Such a revoking clause might be sufficient reason for the probate of a will. *Dudley v. Gates,* 124 Mich. 440, 83 N. W. 97; *In re Estate of Strelow, supra.* However, we do not believe the admission of a will to probate and the appointment of the administrator estops an interested party from having a construction of the terms of a will by the county court for the purposes of the order of distribution or by the district court on appeal therefrom. Such was the procedure in the instant case. The appellees took part in this procedure. An order of distribution by the county court is necessary in both testate and intestate estates. Provision is made for appeal from

such an order to the district court. It was not necessary for the county court to determine to whom the property should be distributed at the time the will was admitted to probate or when the administrator was appointed. Nor was it done in the instant case. So the fact that the will was admitted to probate does not estop the rightful owners of the property of the testator from securing an order of distribution.

This brings us to the construction of the disputed clause in the will: "I give, devise and bequeath, unto my beloved wife Amalia Luckhardt all the property, real and personal, and effects of every name and nature which I now have, may die possessed of, or may be entitled to, her heirs and assigns forever." There was no residuary clause.

It is axiomatic to say that the intention of the testator controls in the construction of a will if it is consistent with the rules of law. Comp. St. 1929, sec. 76-109. But the plain and certain rules of law should not be set aside except in favor of an equally plain and certain disposition of the testator. *In re Estate of Hanson*, 118 Neb. 208, 224 N. W. 2. Do the words "her heirs and assigns forever" in the will describe the nature of the estate given to the beneficiary, or do they describe the persons who are to take? Or, putting it differently, are they words of limitation or purchase? Under the common law the words were used to indicate that the entire property was given absolutely, and, if real estate, that it was given in fee simple. By statute in this state such words are no longer necessary to convey the fee title. Formerly these words were an intensified form of expression of an absolute gift. Although not now necessary to convey title, they are still quite often used to give greater certainty that a devise was intended to be absolute.

The court in *Jackson v. Alsop*, 67 Conn. 249, 34 Atl. 1106, uses this language: "Where the word 'assigns' is added to the word 'heirs,' it is almost impossible to read the whole phrase otherwise than as words of limitation, and not as intended to create an estate in any other person.

2 Redfield on Wills, 82; *Grafftey v. Humpage,* 1 Beavan, 46; *Holloway v. Clarkson,* 2 Hare, 521, 523."

In *Loveren v. Donaldson,* 69 N. H. 639, 45 Atl. 715, a similar phrase was under consideration and the following language used: "But the use of the words 'her heirs and and assigns forever,' immediately following the name of the devisee or legatee, are not alone sufficient to express this intention and to prevent a lapse. These words have a well-settled construction, by which they are held to be merely words of limitation used to describe the nature of the estate given to the beneficiary, and not to express an intention that a lapse should be avoided by the substitution of the heirs in place of a predeceased devisee or legatee. Where words and terms like these have a well-settled and well-understood meaning, they will not be given a different one, unless it appears that the testator employed them in a different sense and intended to express a different meaning. *Cressey v. Wallace,* 66 N. H. 566." See *Matter of Clark,* 175 N. Y. 139, 67 N. E. 212.

Therefore, we conclude the inference to be drawn from the phrase "her heirs and assigns forever" as used in the instant case is not sufficient to show other intent than the original meaning of the words at common law, that the words are of limitation and are not to be used in a substitutionary sense.

The appellants complain because the trial court permitted the introduction of evidence showing the surrounding circumstances importing into the will an intention to substitute as devisees all the children of the primary devisee and legatee. They maintain that since the will was not ambiguous in its terms it was unnecessary to resort to such testimony of surrounding circumstances in order to ascertain its meaning. The rule in this state has been clearly defined. Where words in a will are unambiguous, no evidence, however strong, should be considered to prove an unexpressed intention varying from that which the words taken in their primary sense indicate. *In re Estate of Wirsig,* 128 Neb. 297, 258 N. W. 467; *In re Estate of Han-*

*son, supra; In re Estate of Hunter,* 132 Neb. 454, 272 N. W. 318; *In re Estate of Nelson,* 132 Neb. 376, 272 N. W. 219; Comp. St. 1929, sec. 76-109. The rule is in accordance with the general rule. *Gilmore v. Jenkins,* 129 Ia. 686, 106 N. W. 193; *Jackson v. Alsop, supra.* We conclude that the oral evidence of the surrounding circumstances should not have been admitted by the trial court to determine the testator's intent.

As to the meaning of the word "relation" in section 30-229, Comp. St. 1929, the appellants contend that this word applies only to a devisee or legatee of the blood or kindred of the testator. On the other hand, the appellees contend that the statutes of descent in this state, construed with section 30-229, prohibit a lapsing of the devise or legacy and make the wife a "relation," since this court has held that under the statutes of descent the wife is an heir of the husband.

Section 30-229 provides: "When a devise or any legacy shall be made to any child or other relation of the testator, and the devisee or legatee shall die before the testator, having issue who shall survive the testator, such issue shall take the estate so given by the will in the same manner as the devisee or legatee would have done if he had survived the testator, unless a different disposition shall be made or directed by the will." Section 30-101, Comp. St. 1929, provides, in substance, that the real estate of any person dying leaving a wife or husband surviving shall descend in part to the surviving husband or wife. Section 30-103, Comp. St. 1929, provides for the interest of the surviving spouse in personal property. These are the statutes of descent and distribution. Under these statutes this court has held that either spouse may be an heir of the other. *In re Estate of Hanson,* 118 Neb. 208, 224 N. W. 2; *In re Estate of Rosenbery,* 132 Neb. 883, 273 N. W. 805.

It might throw light on the subject to determine how statutes similar to section 30-229 were construed by other courts. In 1914 the supreme court of Michigan in *Menard v. Campbell,* 180 Mich. 583, 147 N. W. 556, held that a wife

was an heir of a husband under the statutes of descent of that state. In 1923, in the case of *In re Spier's Estate*, 224 Mich. 658, 195 N. W. 430, on the question of lapsing, it is stated: "Counsel are agreed that on principle as well as authority we should hold that the word 'relation,' as used in this section, means kindred by blood only and excludes husbands, wives, stepchildren, and the like. We, therefore, content ourselves with calling attention to the authorities, and they seem to be uniform, so holding. *Esty v. Clark,* 101 Mass. 36, 3 Am. Rep. 320; *Horton v. Earle,* 162 Mass. 448, 450, 38 N. E. 1135; *Curley v. Lynch,* 206 Mass. 289, 292, 92 N. E. 429; *Worcester Trust Co. v. Turner,* 210 Mass. 115, 120, 96 N. E. 132; *Keniston v. Adams,* 80 Me. 290, 14 Atl. 203; *Cleaver v. Cleaver,* 39 Wis. 96, 20 Am. Rep. 30; *Sackman v. Campbell,* 10 Wash. 533, 39 Pac. 145. * * * In our opinion, the devise and bequest to the husband in the second paragraph lapsed and passed into the residue of her estate."

The Washington supreme court in *In re Renton's Estate,* 10 Wash. 533, 39 Pac. 145, a somewhat similar case, stated: "Counsel argue with great force and much plausibility that in this state a regard for the wife is so strongly displayed by the statutes relating to descent and community property that a different position should be taken. The statutes of descent, it is said, make the wife an heir of her husband. Gen. Stat. secs. 1480, 1482, 1495. But, while all this is true, we feel no impulse coming from the statute towards enlarging its provisions."

The supreme court of Wisconsin in *Cleaver v. Cleaver,* 39 Wis. 96, in passing on the phrase "child or other relation" in the statute of that state against lapsing, uses the language: "Child or other relation must signify child, or other relation of like character as a child; that is, other relation of the testator's blood. 'When particular words are followed by general ones, the latter are to be held as applying to persons and things of the same kind as those which precede.'"

The supreme court of Ohio, in *Schaefer v. Bernhardt,* 76 Ohio St. 443, 81 N. E. 640, in construing the word

"relative" in a statute against lapsing, said: "An examination of the cases collected in the briefs and others shows that, the question not being affected by the context or by related provisions, the decisions have quite uniformly regarded the word in statutes of this character as applying only to those who are related by consanguinity to the testator. Support for the contrary view cannot be derived from the statutes entitling the husband to participate in the property which had belonged to the deceased wife," etc. See *Estate of Sowash,* 62 Cal. App. 512, 217 Pac. 123.

In 1869 Massachusetts had the following statute on lapsing, as shown by the opinion in *Esty v. Clark,* 101 Mass. 36: "When a devise of real or personal estate is made to a child or other relation of the testator and the devisee dies before the testator, leaving issue who survived the testator, such issue shall take the estate so devised, in the same manner as the devisee would have done had he survived the testator." In this case the wife had been married twice and had a child by each marriage. She was devisee of her second husband's will and predeceased him. The same question arose as in the instant case. The court in its opinion in determining the meaning of the word "relation" discusses the meaning of the word as it had previously been used in wills, and sets out a quotation from 2 Jarman, Wills (4th Am. ed.) 45, wherein it is stated that, in order to keep a bequest in a will to a "relation" from becoming void because it is indefinite and vague, recourse is had to the statutes of distribution as to personal property in case of intestacy. The court also sets out authorities which held that the word meant blood relation and quotes Lord Hardwicke (*Davies v. Bailey,* 1 Ves. Sen. 84) to the effect that the word is properly used to express kindred "by blood." Then the court quotes *Storer v. Wheatley's Executors,* 1 Pa. St. 506, wherein it is held a wife does not come within the terms of "my nearest relations or connections," and then concludes: "Whatever may be thought of the reasoning of the court in that case, there seems to be no authority for holding that the word 'relation,' in its strict legal and

technical sense, includes husband or wife. On the contrary, authorities are found very direct and explicit to the point that they are not 'relations.' Thus in 2 Williams on Executors, 1004, it is laid down that 'no person can regularly answer the description of "relations" but those who are akin to the testator by blood. A wife therefore cannot regularly claim under a bequest to her husband's relations, nor a husband as a relation to his wife.' So in 2 Jarman on Wills, 49, it is said that 'a gift to next of kin or relations does not include a husband or wife.' Both these writers refer for authority to numerous cases cited from the reports." The opinion in the case does not give the provisions of the statute of descent in Massachusetts at that time. However, in the state report of the case, the law brief of counsel, set out above the opinion, who contends that the child by the first marriage or stepchild should take his moiety along with the other child, is in part as follows: "Gen. Sts. c. 94, sec. 16; for by this statute a widow is entitled as much and in the same manner to her share as are those of kin by blood to the intestate. Formerly the widow was not considered as taking her share by force of the statute of distribution, as her portion of the personal property came to her by a decree of the judge of probate. St. 1783, c. 36, sec. 3." So the supreme court of Massachusetts undoubtedly considered a somewhat similar statute of distribution as considered in the instant case and regarded it as not controlling. In 1910, *Esty v. Clark, supra,* is approved in *Curley v. Lynch,* 206 Mass. 289, 92 N. E. 429, and the same conclusion reached as to the meaning of the term "relation."

Massachusetts, Michigan and Wisconsin cases are of particular interest as to statutes providing for the collection and administration of estates of deceased persons in Nebraska, for our statutes with reference to such matters derive their origin in the first place from Massachusetts. It has been claimed that they came to us by way of New Hampshire, Michigan and Wisconsin. But whether this is correct or not, it is a fact that a number of the most im-

portant provisions are identical with the laws of Massachusetts which date back for many years.

We cannot, in any way, see how the Nebraska statutes of descent giving the wife the right to receive an interest in her husband's estate have in any way enlarged the provisions of section 30-229, preventing lapsing of devises or legacies. It is true that there is an intimate relation between husband and wife and such ties of affinity are often stronger than those between kinsmen, but the question is whether this is the relation mentioned in the statute against lapsing mentioned above. The provisions of sections 30-101 and 30-103, Comp. St. 1929, permitting the wife to receive an interest in her husband's estate, are personal to her and are prompted by a consideration of what is considered due her under the advanced and modern ideas of justice and the proper consideration of the marital relation. But section 30-229 in no way affects the wife's interest in the subject of the devise or the legacy, but is for the sole purpose of giving what is considered due the issue of the devisee surviving the testator. The purpose and end sought in the statutes against lapsing are entirely different than the end sought by the statute of descent and distribution. It is true that formerly most statutes of descent and distribution made the heirs or kindred of the deceased the beneficiaries, but it does not necessarily follow that because a wife is added to the list of persons so taking under the statutes of distribution she therefore becomes a "relation" of the deceased husband in the sense in which the word "relation" is used in section 30-229. The legislature by statute may permit any person to inherit or receive a share in the decedent's estate, and in that sense the person so receiving is an heir of the decedent. An heir at law is simply one who succeeds to the estate of the deceased person. If the words "other relation," as used in the statute, are construed to be those persons of the same character as a "child," then the devise naturally goes only to those of the blood of the testator. But if the words are construed to mean the relationship of affinity, the statute might take

the devise away from the kindred of the testator and give it to strangers of the testator's blood. That would in part be true in the instant case. The statute against lapsing was never intended to make provision for a stranger to the blood of a testator. A child or other relative, if of a kindred blood, is the natural person for consideration by a testator, and the words of the statute mean that the devise or legacy is intended to go to other relatives of the same kind and character as the testator's child, that is, relatives by consanguinity and not by affinity. 2 Paige, Wills, sec. 1252; 69 C. J. 1063.

There is no doubt that the testator and his stepsons, the appellees, were on the best of terms and that the appellees manifested a filial attitude towards him. However, those facts are not relevant under the circumstances above indicated. In the instant case we think the sentiment expressed in *Cleaver v. Cleaver, supra,* is quite pertinent: " 'It is an unfortunate case, but the law is clear. The legacy lapsed by the death of the legatee in the life of the testator.' The statute 'does not reach the present case, and we are sorry for it.' "

We, therefore, conclude that the trial court was in error in its construction of the will and that only the four children of the testator and Amalia Luckhardt should share in the distribution. The judgment of the district court is reversed and the case remanded, with directions to enter judgment for the appellants in accordance with this opinion.

REVERSED.