FRED M. ATTEBERY ET AL., APPELLEES, v. O. D. PRENTICE ET AL., APPELLANTS.

65 N. W. 2d 138

Filed June 18, 1954. No. 33525.

*Mothersead, Wright & Simmons,* for appellants.

*Neighbors & Danielson,* for appellees.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is an appeal from the district court for Sioux County. It primarily involves the construction of the last will and testament of O. T. Attebery, deceased.

O. T. Attebery died on August 24, 1942, a resident of Scotts Bluff County. He left a last will and testament which was duly allowed and admitted to probate by the county court of Scotts Bluff County on September 22, 1942. This will, insofar as here material, is as follows:

"Second: I give, devise, and bequeath unto my wife, Ellelia Attebery, all of my real estate wheresoever situated, to have and to hold during the period of her natural life, but with full power and authority to sell and convey the same or any part or portion thereof at any time when it may be advantageous or profitable to do so or when it becomes necessary for her support, said support to be such as is suitable for persons of her age and social position, and of a like character to which she was accustomed during the later years of our married life. The remainder of said real estate, if any, on the death of my wife, I give, devise, and bequeath to Henry B. Attebery, Richard L. Attebery, Fred M. Attebery, Charles W. Attebery, Harry E. Attebery, Lena Fuhrer Francil, Susie Wissenberg, and Sadie Strufing, share and share alike.

"Third: I give, devise, and bequeath unto my said wife, Ellelia Attebery, all my personal property of every description, with the request and direction that she shall execute a will leaving the remainder of such personal property as she shall be possessed of at her death to the beneficiaries named in the paragraph numbered second, of this my will, share and share alike.

"Fourth: In case of the death of myself and wife in a common disaster all of my said property of every

description, real, personal, or mixed, shall immediately descend to and vest in the beneficiaries named in the paragraph numbered second of this my will, share and share alike."

Among the assets of the estate was a ranch consisting of 8,360 acres of deeded land and a lease on a section of state school land. On July 1, 1951, the widow conveyed this land and assigned the lease on the section of school land to O. D. Prentice.

The consideration for the deed was an annuity contract secured by a mortgage on the real estate conveyed. By the terms of this contract O. D. Prentice agreed to pay the widow, during each year of her natural life the sum of $6,000, the same to be paid on the first day of July of each year commencing with July 1, 1951; to pay to her executor or administrator, upon her death, that part of the annual payment which had accrued up to the time of her death; to satisfy any and all claims which he had against her for professional services already rendered as her doctor; to make no charge for any professional services he might render to her in the future; and to pay any and all doctor and hospital bills which she might incur.

The widow died on December 16, 1952. Shortly after her death some of the parties named as remaindermen in the will of O. T. Attebery learned they were such. Thereafter, on December 29, 1952, the living remaindermen named in the will, and the heirs or successors of those who had died, commenced this action against O. D. Prentice and his wife, Mary Lou. The purpose of the action is to have the deed and conveyance from Ellelia Attebery to O. D. Prentice vacated, canceled, and annulled; to have the mortgage, dated June 30, 1951, and recorded in book 28 of mortgages, pages 191-192, canceled and annulled, and the purported lien thereof removed; to have the title to the real estate above described quieted in the plaintiffs; to require O. D. Prentice and Mary Lou Prentice to make an assignment

to plaintiffs of the lease from the State of Nebraska covering Section 16, Township 25 North, Range 57 West of the Sixth P. M., Sioux County, Nebraska, upon the payment by plaintiffs to defendants of a sum equal to the amount of the bonus paid to the State of Nebraska for said lease; and to have O. D. Prentice account to plaintiffs for the rents and income from said property.

The trial court found generally for the plaintiffs and decreed, insofar as here material, that upon payment by the plaintiffs into court the sum of $3,694.64 for the benefit of O. D. Prentice that the purported deed from Ellelia Attebery to the defendant O. D. Prentice dated July 1, 1951, be vacated, canceled, and annulled; that the mortgage dated June 30, 1951, be vacated, canceled, and annulled, and the purported lien of said mortgage upon the real property described in said mortgage be removed; that title to the real property described in the above-described deed be quieted in plaintiffs; and that the defendants assign to plaintiffs the school land lease from the State of Nebraska.

Defendants filed a motion for a new trial and have perfected this appeal from the overruling thereof.

Under the will the widow became possessed of a life estate in the ranch with a power of sale. See, Perigo v. Perigo, *ante* p. 733, 64 N. W. 2d 789; Annable v. Ricedorff, 140 Neb. 93, 299 N. W. 373; Abbott v. Wagner, 108 Neb. 359, 188 N. W. 113.

The character of the remainder as a vested estate is not affected by the conferring upon the life tenant the power to sell and convey the premises for certain purposes. Abbott v. Wagner, *supra;* Ashbaugh v. Wright, 152 Minn. 57, 188 N. W. 157. In other words, the widow did not become vested of the fee by reason of the authority vested in her by the will.

Based on the many cases and authorities cited it seems to be appellants' thought that the power of sale given the widow was sufficiently broad that thereunder she had an absolute and unlimited power of disposition and

could dispose of the real estate of which her husband died seized, or any part thereof, whenever she pleased as long as she felt it was in any way advantageous or profitable to her, provided she acted in good faith and did not waste or squander the property for the purpose of preventing the remainder from going to the remaindermen.

Also, it appears to be appellants' thought that her decisions on the question of what was necessary for her support required the exercise of judgment and discretion on her part and, if fairly and honestly made, would be conclusive.

In Perigo v. Perigo, *supra,* quoting from Kramer v. Larson, *ante* p. 404, 63 N. W. 2d 349, with approval, we held:

" 'In searching for the intention of the testator the court must examine the entire will, consider all its provisions, give words their generally accepted literal and grammatical meaning, and indulge the presumption that the testator understood the meaning of the words used.

" 'The intention of the testator as determined from the will must be given effect if it is not inconsistent with any rule of law.' "

Therein we also held, by quoting from Hill v. Hill, 90 Neb. 43, 132 N. W. 738, 38 L. R. A. N. S. 198, that: " 'It is the duty of the courts in construing a will to carry into effect the true intent of the testator, so far as that intent can be collected from the whole instrument, if not inconsistent with the rules of law; but the law imputes to the testator a knowledge of those rules, and he will be presumed to have executed his will with an understanding that the objects of his bounty may demand their portions in accordance therewith.' "

Taking his will as a whole, O. T. Attebery gave to his wife, Ellelia Attebery, the life use of all his real estate with the remainder to "Henry B. Attebery, Richard L. Attebery, Fred M. Attebery, Charles W. Attebery, Harry

E. Attebery, Lena Fuhrer Francil, Susie Wissenberg, and Sadie Strufing; share and share alike." In connection therewith he gave the owner of the life use full power and authority to sell and convey the same, or any part or portion thereof, at any time when it became advantageous or profitable to do so, that is, advantageous or profitable to all parties interested therein. In addition to the income therefrom, in order to be sure his widow would always have sufficient for her support in a manner suitable for a person of her age and social position and in keeping with the standard to which she had become accustomed, he gave her full power and authority to sell and convey such real estate, or any part or portion thereof, when it became necessary for her to do so for that purpose.

The right here given the widow to dispose of the corpus of the property was a limited right and could only be exercised by her consistent with the objects and purposes for which the authority was given. Abbott v. Wagner, *supra*.

Ordinarily courts will not interfere with the discretion of the life tenant in the exercise of this authority but he is not necessarily the sole and ultimate judge thereof. A court of equity will review his judgment and, if the evidence adduced shows he has exceeded the authority given him, revise his judgment. Abbott v. Wagner, *supra;* Beliveau v. Beliveau, 217 Minn. 235, 14 N. W. 2d 360; Morford v. Dieffenbacker, 54 Mich. 593, 20 N. W. 600.

We will consider first the widow's authority to sell and convey in case it became necessary for her support. Under the terms of the will we think the widow was entitled to support solely from the estate without regard to her own separate means of support. See, Annotation, 101 A. L. R. 1465; In re Worman's Estate, 231 Iowa 1351, 4 N. W. 2d 373.

In considering the record we apply the following: "It is the duty of this court in an equity case to try

the issues de novo and to reach an independent decision without being influenced by the findings of the trial court except if the evidence is in irreconcilable conflict this court may consider that the trial court saw the witnesses, observed their manner of testifying, and accepted one version of the facts rather than the opposite." Keim v. Downing, 157 Neb. 481, 59 N. W. 2d 602.

The evidence shows that when the estate of her husband was settled the widow had a bank account of about $14,644; United States Government bonds, purchased in 1941 and 1942, with a value at maturity of $1,200; the life use of the home in which she lived; and the income from the ranch. That on July 1, 1951, when she conveyed the ranch, she had bank accounts totalling about $36,000; United States Government bonds with a value at maturity of $12,200, of which $11,000 had been purchased since the year of her husband's death; the life use of the home; and the life income from the ranch. On July 1, 1951, the ranch was leased until May 1, 1953, for a rental of $2,800 per year, and had an oil and gas lease thereon which was yielding delay rentals of $2,020 per year. The taxes on the ranch were between $900 and $1,000 per year.

It is self-evident, from the foregoing, that the income which the widow had been and was receiving from the ranch since her husband's death up to July 1, 1951, had been more than adequate for her support and had permitted her to substantially increase her own funds. In this regard the evidence establishes she was leasing the ranch for less than its fair rental value. There was absolutely no necessity or need for her selling the ranch for her support.

We come then to the question of whether or not she was authorized under the power and authority to sell and convey the same, or any part thereof, because it was advantageous or profitable to do so. We think this authority relates to all those interested therein, which would include remaindermen. It is apparent the widow,

whose duty it was to keep the improvements on the ranch in repair, had neglected this duty although the income was sufficient for that purpose.

The only advantage gained by the sale flowed to the widow. She was of the age of 68 years and 5 months at the time and it appears she did not like the responsibility of looking after the ranch, which included making necessary improvements and keeping the improvements thereon in repair; that the sale relieved her of this worry and gave her a feeling of security and peace of mind; and that it gave her some increase in her annual income, although not needed for her support. On the other hand it completely deprived the remaindermen of all rights therein as, under the contract, there would be nothing left for them whenever she died.

The relation of a life tenant to his remaindermen is that of a quasi trustee. The relation is the same if a power of disposal is annexed to the life estate. See, Beliveau v. Beliveau, *supra;* Mallett v. Hall, 129 Me. 148, 150 A. 531; Johnson v. Johnson, 51 Ohio St. 446, 38 N. E. 61.

As stated in Mallett v. Hall, *supra:* "The life tenant is a trustee for the benefit of the remainderman only in the sense that the duty rests upon him merely to have due regard for the rights of those in remainder."

And, as stated in Beliveau v. Beliveau, *supra:* "* * * a life tenant is a quasi trustee of the property in the sense that he cannot injure or dispose of it to the injury of the remainderman, even though a power of disposition and encroachment are annexed to the life estate."

Here a ranch, reasonably worth at the time not less than $133,000, was conveyed by the widow at a time when no need existed for doing so, as far as her support is concerned, and certainly the benefits she would gain would not overcome the large loss the remaindermen would suffer. To permit this conveyance to stand would not only be unfair to the remaindermen but would permit the life tenant to perpetrate a fraud on them.

We think the evidence requires that the deed be set aside, the mortgage canceled and the lien thereof removed from the records of Sioux County, and the title to the lands quieted in the appellees. The trial court having so decreed, we affirm its action in so doing. * * *

At the time of his death, O. T. Attebery was the owner of a lease on a section of the state's school lands. It was part of the real estate belonging to his estate. Beltner v. Carlson, 153 Neb. 797, 46 N. W. 2d 153. It apparently expired sometime after July 1, 1951. When a new lease was put up for sale it was successfully bid in by the widow. She then assigned it to O. D. Prentice. We think this lease was all part of the same transaction and that it should be returned to the appellees. We therefore affirm the trial court's decree so directing.

Sadie Strufing, one of the remaindermen named in the will, died prior to the testator. She was his sister-in-law and not a blood relative so her heirs took no interest under the will. See, § 30-228, R. R. S. 1943; Lacy v. Murdock, 147 Neb. 242, 22 N. W. 2d 713; In re Estate of Strelow, 117 Neb. 168, 220 N. W. 251; Woelk v. Luckhardt, 134 Neb. 55, 277 N. W. 836, 115 A. L. R. 437.

It is appellants' thought, because of the foregoing, that O. T. Attebery died intestate as to a ⅛ interest in this property because, as stated in Jacobsen v. Farnham, 155 Neb. 776, 53 N. W. 2d 917: "It is elementary that real estate not disposed of by will becomes intestate property and descends to the heirs at law of the testatrix." If such is the case, of course, the widow, there being no children, would inherit a one-half of the ⅛th or a 1/16th interest therein.

The trial court did not pass on this question because it was neither pleaded nor raised at the time of the trial and was first called to its attention by the motion for new trial.

It is apparent from his will that O. T. Attebery intended to make a complete testamentary disposition of all of his property by providing for his wife during her

lifetime and for certain persons after her death. We think what was said by the court in Bragg v. Litchfield, 212 Mass. 148, 98 N. E. 673, is applicable to the will here. Therein the court said: "In the present case we think that it appears from the will taken as a whole that the testator intended the provision which he made for his widow to be a full and final provision for her."

As stated in Goodrich v. Bonham, 142 Neb. 489, 6 N. W. 2d 788: " 'There is a presumption that a testator intended to dispose of his entire estate and not to die intestate either as to the whole or as to any part thereof, and where a provision of a will is fairly open to more than one construction, a construction resulting in an intestacy as to any part of the estate will not be adopted if by any reasonable construction it can be avoided.' 69 C. J. 91. Consistent with this rule this court has held that in construing a will it is presumed that the testator intended to dispose of his entire estate unless the contrary is apparent from the will itself. Jones v. Hudson, 93 Neb. 561, 141 N. W. 141; In re Estate of Zimmerman, 122 Neb. 812, 241 N. W. 553; Luenenborg v. Luenenborg, 128 Neb. 624, 259 N. W. 649."

We think a proper construction of the will is that when O. T. Attebery died the other seven remaindermen, or their heirs, became vested with the remainder interest in the real estate of which he died seized subject only to the rights of the widow and that he did not die intestate as to any part thereof.

In making its accounting it is apparent that the trial court inadvertently failed to give appellants credit for taxes paid in the sum of $931.85 and payment on the lease of $104.60. The correct amount which appellees should pay into court is $4,731.09 and not $3,694.64.

While in possession of the ranch O. D. Prentice spent over $11,000 for material and labor in making, or attempting to make, certain repairs and improvements on the ranch. Nothing was allowed by the trial court for

these expenditures. We think he is entitled to be reimbursed for these repairs and improvements to the amount that he can show they enhanced the value of the real estate. Dougherty v. White, 112 Neb. 675, 200 N. W. 884, 36 A. L. R. 425.

As stated in Gombert v. Lyon, 72 Neb. 319, 100 N. W. 414, quoting from Lothrop v. Michaelson, 44 Neb. 633, 63 N. W. 28: " 'Where an occupying claimant is allowed for valuable and lasting improvements made while in possession, the measure of his recovery is the amount the real estate increased in value by reason of such improvements, and not the cost of making the same.' "

Prentice testified these repairs and improvements increased the value of the ranch in the amount he had expended. His cross-examination does not support such a conclusion. There certainly is no sufficient basis, from all the evidence adduced, to support such a finding. It is evident this issue was not sufficiently presented at the trial to permit the trial court to make any proper finding in regard thereto. If this rather large sum really enhanced the value of the ranch property we think, as a matter of equity, Prentice should be given a right to recover the amount thereof. When the cause is returned to the trial court the appellants should be given such privilege if request therefor is made within 20 days.

Having come to the foregoing conclusions, we do not find it necessary to discuss other matters raised by the appeal, such as the contention that the deed was obtained by undue influence; the inadequacy of the consideration therefor; the effect of the fact that Prentice and Ellelia Attebery stood in the relationship of doctor and patient, particularly in view of her age, and the weakened condition of her health and mind as affecting her ability to comprehend the effect of her act; and the question of the admissibility of the testimony of attorney Robert L. Gilbert.

We modify the decree of the trial court in accordance

with the conclusions we have herein reached and, as modified, the decree is affirmed with directions to the trial court to enter a decree in accordance herewith. All costs are taxed to appellants.

AFFIRMED AS MODIFIED.