WESTERN MATTRESS COMPANY V. JENS OSTERGAARD.*

FILED APRIL 7, 1904.   No. 13,518.

1. **Action for Damages:** CONTRIBUTORY NEGLIGENCE. If a servant's injury is the direct result of his own disobedience of orders given by one in charge of the work in which he is engaged, he is guilty of contributory negligence and is not entitled to recover therefor.

2. **Trial:** QUESTION FOR JURY. When there is evidence tending to show that an employee disobeyed the orders of his superior, and that obedience to the order would have avoided the injury of which he complains, the question of whether the orders were given should be submitted to the jury.

ERROR to the district court for Lancaster county: LINCOLN FROST, JUDGE. *Reversed.*

*T. J. Doyle* and *Strode & Strode,* for plaintiff in error.

*Frederick Shepherd, contra.*

DUFFIE, C.

Plaintiff in error is engaged in the manufacture of iron bedsteads at the city of Lincoln. Ostergaard, an employee, was injured in the defendant's foundry by molten metal, which flew from a chill or mould and struck him in the left eye. It appears from the evidence that the foundry is provided with a number of benches, where the hands "assemble" or place the rods and other parts of the bed in a frame attached thereto in such manner as, when bound together, to make a completed head or foot piece of the bed. The frame is also supplied with moulds or chills at proper places, and into these, after the rods and parts have been assembled and the frame unlocked, one of the employees pours molten metal through spew holes opening thereon. By this means the rods or parts are molded and bound together and, after the molten metal has cooled, the workmen unlock the frame and take out the completed head or foot piece of the bed. There are two dangers accompanying this process. One from some of the molten

* Rehearing allowed. See opinion, p. 575, *post.*

metal dropping upon the ground and "popping" or throwing off minute particles of the metal. This popping from the ground does not usually arise higher than a man's knees or waist. The other danger arises from the rod upon which the molten metal is poured being damp or rusted, in which case the popping comes from the mould or chill, and the face and eyes of the workmen are endangered thereby. To guard against injury from the last mentioned cause, the company usually furnished each of its employees, upon their entering its service, with a notice reading as follows: "Notice to men entering the employ of the Western Mattress Company in the iron bed department: You are requested to bring a two pound blacksmith's hammer and a pair of glasses. These glasses are to protect your eyes from injury, and, while not compulsory on your part to wear them, still we advise you to take this precaution. The best pair of glasses can be made by buying what are commonly called 'goggles,' being composed of a light screen work of wire with glass in front; the glass should be removed and mica or, as it is often called, 'isinglass' substituted. This makes a pair of glasses that will not break and which, if struck by a hot iron, will not be destroyed or burned in any way. The gauze or iron part of these glasses extends away from the eye, giving ample ventilation. so there will be no difficulty from sweating around the eyes, as there would be from ordinary glasses." By some oversight the company neglected to give this notice to the defendant in error when he entered its employ. Within two or three days after commencing work he was engaged in filling the frame with the iron rods, and was standing near thereby when the "pourer" filled the moulds or chills with molten metal, and what is denominated a "pot" came from the chill, throwing a piece of the hot iron into his eye, from which he suffered great pain, and the sight, while not destroyed, is injured to a considerable extent. The negligence charged is the failure to provide him with goggles or to notify him of the danger attending his work. A trial resulted in a verdict

for the defendant in error and, judgment having been entered thereon, the case is brought here for review.

Many exceptions are taken to the instructions given by the court, and to the refusal of the court to give those asked by the plaintiff in error. We do not think that it is necessary to review all the questions made, as the case, in our opinion, will have to be reversed upon the refusal of the court to give the tenth instruction requested by plaintiff in error. This instruction is as follows:

"If the jury find from the evidence that defendant's foreman instructed the plaintiff to stand behind him (the foreman), and turn his face in the opposite direction from the chills into which molten metal was being poured at the time of the accident, and if the plaintiff did not obey such instructions, but stood with his face in the direction of the chills into which molten metal was being poured at the time of the accident, then he can not recover in this action."

Roy Redding was foreman of the company at the time the accident occurred, and the party who poured the molten metal into the moulds or chills. He testified that he directed Ostergaard to stand back behind him, and to turn his back to the mould or chill while the metal was being poured. The evidence is uncontradicted that Ostergaard stood facing the mould or chill at the time he received the injury. It is apparent that, if he had obeyed the instructions of the foreman and turned his back to the moulds, the injury to his eye would not have happened. Whether such instructions were given him or not was a question for the jury, and plaintiff in error had the right to have that question submitted to the jury, and to take their judgment upon any conflicting evidence relating to the giving of such instructions. The law is plain that, if the servant's injury is the direct result of his own disobedience of orders, he is guilty of contributory negligence and can not recover on that account. We have examined the instructions with care, and we find nothing in them that is the equivalent of the tenth instruction asked by the plaintiff in error, or

calls the attention of the jury to this theory of the case. We think there was error in the refusal of the court to give this instruction or one covering the point raised, and we therefore recommend a reversal of the judgment.

LETTON and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

REVERSED.

The following opinion on rehearing was filed November 16, 1904. *Judgment of reversal adhered to:*

1. **Trial:** INSTRUCTIONS. When a special request is made for an instruction which fairly reflects either a meritorious cause of action or ground of defense, the court should either give the instruction requested or substitute another in its stead which embodies the same principal.

2. **Negligence:** INSTRUCTION. When an allegation of negligence is unsupported by any competent testimony, it should not be given in an instruction to the jury.

OLDHAM, C.

The original opinion in this case was announced by DUFFIE, C., *ante,* p. 572. The issues are fully and fairly stated in the opinion and need not be again set out. A rehearing was granted for a further examination of the conclusion reached. It is held in the opinion that the judgment of the district court was erroneous, in refusing to submit to the jury the question as to whether plaintiff was injured while disobeying an instruction given him by the foreman of defendant, who, for that purpose, stood in the place of the master. One of the defenses relied upon and supported by the testimony of defendant's foreman was that, when plaintiff was employed, he was directed by the foreman to turn his back to the foreman when the moulds were being filled with molten metal. While this direction was denied by plaintiff, the testimony on this

issue raised a question of fact on a meritorious defense, which should have been submitted in a proper instruction. It is not necessary to determine whether the instruction requested was the best that could have been compiled; it is sufficient to say that it fairly called the attention of the trial court to one of the defenses relied upon, and that either the instruction requested, or a better one embodying the same principle, should have been given. In fact, it is probably the duty of the trial court, without a request, to embody in the instructions to the jury every meritorious cause of action or ground of defense raised by the pleadings and supported by competent evidence. But, in any event, when a special request is made for an instruction which fairly reflects either a meritorious cause of action or ground of defense, the court should either give the instruction requested or substitute another in its stead which embodies the same principle.

While, as above indicated, the defendant introduced testimony tending to show that the injury was occasioned by plaintiff disobeying the orders of his foreman in not turning his back when the chills were being filled, yet, even under defendant's testimony, there is a serious doubt as to whether plaintiff might not have been misled by another direction given him by the foreman, to the effect that, if he (the plaintiff) stood behind the foreman when the metal was poured into the chills, he could not be hurt. But, in any event, the question as to whether plaintiff was properly instructed in such a manner as to fully warn him of his danger and whether he obeyed or disobeyed the instruction so given, was a question raised by the pleadings on which there was conflicting evidence and, as a correct verdict depended on this issue, it should have been given in a proper instruction to the jury; and as, for this reason, a new trial will be necessary, we would suggest that the learned trial judge give a new set of instructions to the jury, confined strictly to the questions in issue, and not submitting any question unsupported by any testimony, as was done in the 5th and 6th paragraphs of instructions

given on its own motion at the former trial. These instructions submitted the alleged negligence of the defendant in not providing a shield or guard over the frame to prevent the heated metal from flying out. While negligence is alleged in the petition because of this failure, yet the testimony wholly fails to support this allegation of the petition, and, being wholly unsupported by competent evidence, it should not have been submitted to the consideration of the jury.

We therefore recommend that the former judgment of this court be adhered to.

AMES and LETTON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the former judgment of this court is adhered to.

REVERSED.