## A. FRANK KARNES V. STATE OF NEBRASKA.

FILED DECEMBER 31, 1923.   No. 23417.

1. Witnesses: CROSS-EXAMINATION. In a prosecution for rape, upon cross-examination of an examining doctor, defendant's counsel, in referring to a conversation had with the prosecutrix nearly a year after the crime, asked the witness: "Did you ask her who it was? *A.* Yes." *Held*, that this did not authorize the state on redirect to call out the rest of the conversation which was hearsay and incompetent for any purpose.

2. Criminal Law: REQUESTED INSTRUCTION: DUTY OF COURT. Where a requested instruction as to a particular part of the evidence cannot be given as a whole, yet if it embodies a correct rule of law applicable to the facts of the case, and is not covered by the other instructions, it is the duty of the court to require counsel to prepare, or to itself prepare and give, a proper instruction on the subject.

ERROR to the district court for Franklin county: WILLIAM A. DILWORTH, JUDGE. *Reversed.*

*Relihan, Relihan & Reed, F. M. Tyrrell* and *W. H. Miller,* for plaintiff in error.

*O. S. Spillman, Attorney General,* and *R. F. Stout, contra.*

Heard before MORRISSEY, C. J., DEAN and GOOD, JJ., REDICK, District Judge.

REDICK, District Judge.

Information charging plaintiff in error, defendant, with rape upon a female ten years of age; defendant was convicted of assault with intent to commit rape and sentenced to the penitentiary for two to fifteen years, and brings the case here for review.

The circumstances under which the crime is alleged to have been committed are as follows: Defendant is a married man 58 years old, having lived with his wife 33 years; they had one child, a son, who died several years before; they desired to adopt a girl (which was done later), and the prosecutrix was secured from the Nebraska Children's Home Society, January 17, 1922. She was eleven

years old May 8, 1922. Defendant went to Omaha to get the girl and take her to his home near Riverton, Nebraska. *En route* they stayed over night in a rooming-house at Hastings, where it was necessary to change cars, at least part of the night occupying the same bed. Next morning they left for Riverton, and arrived at defendant's home the 18th about 10:30. There was but one bedroom on the ground floor of the house, and, although there was a couch therein prepared by defendant's wife for the girl's use, she slept that night and for four or five weeks in the same bed between defendant and his wife, at the end of which period she complained to the wife that defendant had "meddled" with her, and thereafter she slept on the couch in the dining-room.

The date of the crime is laid as on or about January 19, 1922, and the circumstances detailed by the prosecutrix are that on the morning Mrs. Karnes got up early to build the fires, leaving her and the defendant in bed; that it was extremely cold, and the doors of the bed-room were closed; that defendant took indecent liberties with her person and placed his body against hers in a position appropriate for the accomplishment of the crime charged; that she wore one-piece pajamas buttoned up behind; that she could feel him close to her; questions as to penetration were not answered; the record is silent as to whether the pajamas were opened; he did the same things other mornings, but questions as to dates are not answered; there is no evidence that she made any outcry or serious objections to the proceedings. She also testified that at Hastings defendant put his arms around her and insisted that she turn over, but she refused; that he took indecent liberties with her person, and by taking her hands required her to do the same with him; no other acts of a serious nature that night are testified to.

The first assignment of error relates to the reception of evidence by defendant's wife, called by the state, that she signed the complaint initiating the prosecution for rape. No objection was made that the witness was incompetent

under the statute, and there was no dispute as to the facts testified to by her. The complaint itself was ruled out, but would have been admissible in rebuttal as affecting the credibility of the witness, who testified for her husband. Her testimony as to what crime was charged in the complaint was not the best evidence, but we cannot perceive that any prejudice resulted to defendant.

The second assignment has to do with the evidence of Dr. Amy Robinson who made a physical examination of prosecutrix in December, 1922, to the effect that she was in the condition in which a married woman would be expected to be after one year; that in the witness' opinion the girl had been "used" to that extent, etc. It appears, however, that she remained with her foster parents until shortly before the complaint was filed in November, 1922, and the date of the examination is not definitely shown, whether latter part of November or early December. The objection is that the examination was too remote, but we think not under the circumstances.

Further objection is made to evidence given by the doctor as to statements made to her by the prosecutrix at the time of the examination. On cross-examination defendant's counsel elicited the following: "Q. You had never seen her before? A. No, sir. Q. And you had not taken that into consideration when you say that some man might have done it? A. I asked her, is all, and she said, 'No;' she said, 'A man did it.' Q. And you asked her that question directly? A. Yes; I did. Q. Did you ask her who it was? A. Yes." Then on redirect: "Q. And when you asked her who did this, and she told you, who did she say?" Objected to as hearsay and not redirect, and overruled. "A. She told me, and I don't remember the man's name. She said it was the man that Miss Armstrong had told me about. I asked her if it was, and she told me all about it; and she told me that at the time in Hastings." Witness then detailed going over to the hotel with the girl to the room they staid in, but these matters are not so important in view of defendant's admission that they occupied the same bed. In answer

to the question, "What part (of the building)?" witness answered: "We went to the head of the stairs, going south, and turned directly back, going north, to the first door, and it reopened right out toward the cafeteria, where she said when he was through with her he went over to get something to eat. She told me that he hurt her until she was crying, and when he left he told her to go to sleep; and he went over there to get something to eat some time in the night when she was asleep and then came back and repeated this performance."

Motion was then repeated to strike out all testimony of such conversations between witness and the girl at Hastings as incompetent, irrelevant, immaterial, and hearsay. "The Court: You opened the door for it when part of the conversation was given. Now they are entitled to have all the conversation given which was had at that time."

Up to this point the only questions asked by defendant's counsel on cross-examination were those quoted above, and we think the learned district judge erred in the above ruling. If it be conceded that the door was opened to the first question, which is extremely doubtful, the answer last quoted above was clearly hearsay and beyond the scope of the cross-examination. Viewed as a complaint in corroboration it was inadmissible, as the details of the complaint may not be received, but only the fact, and was too remote. *Henderson v. State,* 85 Neb. 444.

"A witness for the prosecution is held to be as much the people's witness when under cross-examination as when on his examination in chief *(Campau v. Dewey,* 9 Mich. 381, 417), and the fact that he is permitted on cross-examination, on a subject entered upon in the direct examination, to detail without objection a part of a hearsay story told him, will not authorize the calling out of the rest of it against objection on the redirect examination, upon the claim that it is part of the same conversation." *Wagner v. People,* 30 Mich. 384.

The question was simply in what part of the building the room was, and did not call for any statements made by

Karnes v. State.

prosecutrix. The language of Sutherland, J., in *Winchell v. Latham,* 6 Cowen (N. Y.) * 682, is applicable: "It is impossible to anticipate what the answer of a witness will be, to a general question, until his answer is given. If it is of a nature which would have been inadmissible upon a direct and specific inquiry, the course is, not to permit the inquiry to be pursued, and the evidence to be repelled by other testimony, but to exclude the answer from the consideration of the jury, so far as it was improper to have been given."

Upon recross-examination the following occurred: "Q. You don't know whether she has that or not (sexual hunger)? A. She told me she liked for him to do that thing to her, when they went out to milk; and I didn't think she was normal. Q. Is that all that was said? A. No. Q. What else was said? A. She said he did do that thing to her or with her when they went to the barn to milk. Q. This is the language that she used, is it? A. No, sir; she said that he had sexual intercourse with her when she went to the barn."

This conversation seems to have taken place at a date subsequent to the examination, was clearly hearsay, but was called out by questions of defendant's attorney. The prosecutrix did not testify to any of these facts. It has been said that the charge in question is easy to make, and difficult to prove, and so the strict rules as to hearsay evidence have been relaxed to the extent that evidence of a complaint made immediately or at the first opportunity may be received in corroboration. Whether the complaint by the girl to Mrs. Karnes four or five weeks after the time charged in the information was, under all the circumstances, entitled to any weight in this case was for the jury; but evidence of complaints or statements made the following December must be held too remote as a matter of law. The record of this case presents many instances of disregard of the plain rules of evidence, but, perhaps, in view of the fact that the most damaging evidence was elicited by defendant's counsel on cross-examination, we would be justi-

fied in refusing to interfere with the result. The defendant, however, requested the following instruction:

"You are further instructed that no statements, if any, made by Helen Karnes to Dr. Amy Robinson as to the act of sexual intercourse with the defendant would be sufficient corroboration of her testimony, if any, as to the commission of the crime of rape by the defendant."

This was a correct statement of the law as applied to the doctor's evidence and should have been given. True, the first paragraph of the same request to the effect that corroboration "must be as to the act of sexual intercourse itself" was not correct; but when an instruction cannot be given precisely as requested, it is the duty of the court to give a correct instruction on the subject of the request when not otherwise covered. *Colgrove v. Pickett,* 75 Neb. 440; *Western Mattress Co. v. Ostergaard,* 71 Neb. 575. Such an instruction was especially required in this case where so much hearsay and incompetent evidence had been received over objection. The only part of the charge dealing with this question is No. 14:

"Gentlemen of the jury, you are instructed that hearsay testimony introduced in evidence over a valid objection cannot be considered by you for any purpose in determining the guilt or innocence of the defendant."

This was not sufficiently specific and left to the jury the determination of what was hearsay, and what is a valid objection. It is not approved procedure to overrule objections and receive incompetent evidence, and trust the jury to sift out and disregard it. The proper practice is to exclude such evidence, or if, as sometimes happens, it gets before the jury, it should be stricken out or be specially referred to in the instruction to disregard it. In the present case the incompetent evidence was of such a character as to prejudicially affect the jury in the determination of the guilt of defendant of the crime charged.

Objections to instruction No. 3 are without merit; and it is claimed that the evidence is insufficient to show an intent to commit rape, or to furnish any corroboration of prose-

cutrix' testimony, or to sustain the verdict; but, as the case must be remanded, we will not discuss these questions.

REVERSED AND REMANDED.