VELMA M. TRUTE, FORMERLY VELMA M. MADISON, ADMINISTRATRIX WITH WILL ANNEXED OF THE ESTATE OF BESS DICKINSON, DECEASED, APPELLANT, V. KATE SKEEDE ET AL., APPELLEES.

75 N. W. 2d 672

Filed March 23, 1956. No. 33792.

*Stewart & Stewart,* for appellant.

*Van Pelt, Marti & O'Gara,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is an action brought by Velma M. Trute, administratrix with the will annexed of the estate of Bess Dickinson, deceased, for a declaratory judgment in the district court for Seward County, Nebraska. The purpose of the action is for a determination of questions which have arisen in the administration of the estate of Bess Dickinson, deceased. Certain defendants defaulted, and their default was entered by the trial court. We are primarily concerned in this appeal with the parties made defendants, interested or claiming to have an interest in the proceeds from the sale by the plaintiff of certain real estate located in Seward County, pursuant to a license to sell real estate granted by the district court for Seward County, Nebraska.

The parties stipulated that these defendants are the heirs and issue of the deceased brothers and sisters of W. Q. Dickinson, deceased. All of such parties appear by name and relationship to W. Q. Dickinson in the pleadings and the decree of the trial court, and will not be repeated here.

The parties will be referred to as designated in the

district court, defendants as defendant cross-petitioners or remaindermen, unless otherwise stated.

The trial court entered its decree finding generally in favor of the defendant cross-petitioners, with certain exceptions.

The decree finds that W. Q. Dickinson died in 1927, and his will was admitted to probate in the State of California and in the State of Nebraska. The decree finds the assets of the estate of W. Q. Dickinson, deceased, including a promissory note and mortgage in the amount of $19,200, which was later assigned to Belle Dickinson and Bess Dickinson; that the Hansens conveyed the land to Belle Dickinson and Bess Dickinson in satisfaction of indebtedness; that Belle Dickinson and Bess Dickinson acquired and held fee simple title to the land subject to their life use; that the land was substituted for the principal and interest and was held in the same proportion, namely ten-elevenths as principal and one-eleventh as interest; that Belle Dickinson died in 1942, and Bess Dickinson died in 1951, holding legal title to the Hansen land (which will be described later in the summary of facts); that on June 20, 1952, the plaintiff properly sold this land pursuant to license granted by the district court for Seward County, Nebraska, for $32,200 which should be distributed under the direction of the county court of Seward County, Nebraska, paying ten-elevenths to the cross-petitioners as heirs of the brothers and sisters of W. Q. Dickinson; and that because of the conflicting claims of the cross-petitioners and remaining defendants to the proceeds of the sale of said real estate, the plaintiff was authorized by the county court to commence this action. The decree also finds that the court does not have authority to allow compensation to plaintiff's attorneys for their services in this action, and that each party should pay his own costs.

Judgment was entered in accordance with the find-

ings in the decree. The plaintiff appeals from the judgment of the trial court.

The assignments of error deemed necessary to a determination of this appeal may be summarized as follows: The trial court erred in finding that the defendant cross-petitioners were entitled to any of the proceeds of the sale of the land hereafter referred to as the Hansen land. The trial court erred in not finding that the defendant cross-petitioners were barred from any interest in the proceeds of the sale of such land because the conveyance of the land by the Hansens to Belle Dickinson and Bess Dickinson was in part payment for advances made by them from their own funds for payment of debts of the estate of W. Q. Dickinson, deceased, and for their support and maintenance. The trial court erred in finding that the deed conveying to Belle Dickinson and Bess Dickinson the fee simple title to the Hansen land gave them only a life estate therein. The trial court erred in not finding that the estate of Bess Dickinson had a lien on said proceeds for the advances made by Belle Dickinson and Bess Dickinson from their own funds for their support and maintenance. The trial court erred in not finding that the estate of Bess Dickinson was entitled to the increase in the value of the Hansen land. And the trial court erred in not finding that the plaintiff was entitled to payment from the funds in her possession of all expenses of administration and of this action.

The record shows that Velma M. Trute, the administratrix with the will annexed of the estate of Bess Dickinson, deceased, testified in substance that W. Q. Dickinson, also known as William Q. Dickinson, died on May 1, 1927; that his will was admitted to probate in California and in the county court of Seward County, Nebraska; that the property passing under the will of W. Q. Dickinson, deceased, included a promissory note for $19,200, executed on March 1, 1918, by Soren M. Hansen and Caroline M. Hansen; that this note was

secured by a mortgage on the northwest quarter of Section 29, Township 10 North, Range 2 East of the 6th P. M., in Seward County, Nebraska; that Belle Dickinson died in Los Angeles, California, on August 30, 1942, and left a will which was admitted to probate in California and also by the county court of Seward County, Nebraska, on October 30, 1942; that on March 26, 1943, a final decree was entered in the county court of Seward County, Nebraska, in said estate; that Bess Dickinson died on June 18, 1951, in Los Angeles, California, and left a will which was admitted to probate in California on July 20, 1951; that Maude M. Robbins was appointed as executrix; that said will was admitted to probate in the county court of Seward County, Nebraska, on September 7, 1951, and this witness was appointed as administratrix with the will annexed of the estate of Bess Dickinson, deceased; that no reference was made to the real estate above described in Bess Dickinson's will; and that Item VII of her will provided that the residue of her estate be devised and bequeathed in trust to the Security First National Bank of Los Angeles as trustee for the parties made defendants in this action whose defaults were entered by the trial court. On June 20, 1952, pursuant to a license of the district court for Seward County, Nebraska, dated May 23, 1952, to sell real estate, the real estate was sold for $32,200. On April 11, 1953, the plaintiff filed a report in the county court of Seward County, Nebraska, showing that she had in her possession $32,758.49 which included the proceeds of the sale, less expenses of sale, and at the time of trial she had on hand $32,211.13.

The record further shows that Maude M. Robbins, executrix of the estate of Bess Dickinson, deceased, in California, had made claims against the plaintiff that the money in her hands, less expenses, should be paid by her to the Bess Dickinson estate in California; that claims have been made that the plaintiff should pay the money in her hands, proceeds from the sale of the real

estate, to the answering defendants in this case; that on September 7, 1951, the county court of Seward County, Nebraska, entered an order fixing the time limit for filing claims against the estate of Bess Dickinson, deceased, which was December 28, 1951; and that thereafter notice to creditors was published and no claims were filed, and they are barred.

On June 30, 1952, the district court for Seward County, Nebraska, entered an order confirming the sale of the real estate heretofore described, and directing the plaintiff to distribute the proceeds of the sale pursuant to the settlement of the estate of Bess Dickinson, deceased, in the county court of Seward County, Nebraska. No appeal was taken from any order or decree above mentioned.

After Belle Dickinson and Bess Dickinson acquired title to the real estate in question in 1933, they retained the title and possession of the Hansen land from that time up to the death of Belle Dickinson in 1943, and thereafter Bess Dickinson continued to retain the title and possession of the land until her death on June 18, 1951.

It was stipulated and agreed that after Belle and Bess Dickinson received the deed to the land above described, they thereafter received the income therefrom and paid the expenses in connection with the same, including taxes, up to the time of the death of Belle Dickinson, and thereafter Bess Dickinson received the income and paid such expenses up to the time of her death on June 18, 1951, including taxes.

The parties stipulated as to who are the brothers and sisters of W. Q. Dickinson, deceased, and stipulated as to who are the heirs and issue of the deceased brothers and sisters of W. Q. Dickinson, deceased, living at the time of the death of Bess Dickinson, who are the remaindermen under the last will of W. Q. Dickinson. We refrain from setting forth the same. They appear in the trial court's decree, and their interests or shares are also set forth therein.

By deposition, the attorney for the estates of W. Q. Dickinson, Belle Dickinson, and Bess Dickinson, testified that all of such estates have been closed and distribution made; that the final account of the Bess Dickinson estate was approved on January 11, 1954, and distribution made a short time thereafter; that after payment of the special bequests, the remainder of the estate was delivered to the Security First National Bank of Los Angeles, as trustee; that no claim was filed against the Bess Dickinson estate by the nieces and nephews of W. Q. Dickinson claiming that any of the assets in the possession of Bess Dickinson at the time of her death belonged to them as heirs of W. Q. Dickinson, deceased; and that an action is now pending in which such a claim is made.

There is also by deposition the testimony of an accountant employed to make an accounting and a report with reference to advances made by Belle Dickinson and Bess Dickinson from their own personal assets to the payment of debts of the W. Q. Dickinson estate, and amounts expended by them for living expenses over and above the income of the W. Q. Dickinson estate, the latter accounting being made on a conservative basis. This accounting took into consideration such amounts with interest from 1927 to June 18, 1951, and total interest to March 18, 1954. We shall make reference to the pertinent parts of this testimony later in the opinion.

Before setting forth the provisions of the will of W. Q. Dickinson, deceased, here involved, we deem the following authorities should be borne in mind to enable us to discern the intention of the testator.

In searching for the intention of the testator the court must examine the entire will, consider all its provisions, give words their generally accepted literal and grammatical meaning, and indulge the presumption that the testator understood the meaning of the words used. See Attebery v. Prentice, 158 Neb. 795, 65 N. W. 2d 138.

The intention of the testator as determined from the will must be given effect if it is not inconsistent with any rule of law. See, Perigo v. Perigo, 158 Neb. 733, 64 N. W. 2d 789; Kramer v. Larson, 158 Neb. 404, 63 N. W. 2d 349; Attebery v. Prentice, *supra;* Hill v. Hill, 90 Neb. 43, 132 N. W. 738, 38 L. R. A. N. S. 198.

Item III of the will of W. Q. Dickinson, deceased, insofar as necessary to consider here, provides in part: "I give, devise and bequeath all of my property of whatsoever character and description and wheresoever situate unto my wife, BELLE DICKINSON, and to my daughter, BESS SKEED DICKINSON, as joint tenants and not as tenants in common, for and during the term of their natural lives and the natural life of the survivor of them or either of them; and considering that the uncertainty of life estates may embarrass the advantageous enjoyment of properties thus situated, * * *. Also I do authorize my said devisees in this ITEM III of my Will, or the survivor of either of them, to sell and convey in fee simple any or all of my estate, and/or to mortgage the same, or otherwise encumber the same, said life tenants, or the survivor of either of them, to have the possession, control, management, use, income and profits of said properties, with the right to receive and apply to their own use, or the survivor of either of them, during the natural lives of said life tenants, the entire income of said property; and should the income from said property be insufficient for the support and maintenance of said life tenants, then they are hereby authorized to consume the principal or so much thereof as may be necessary for their comfort and support."

Item IV of said will provides as follows: "Upon the demise of the survivor of the devisees named in Item III herein of this my last Will and Testament, I then give, devise, and bequeath all of the unconsumed rest, residue and remainder of my estate of whatsoever character and wheresoever situate, to my brothers and sisters and their heirs forever, share and share alike, and/or

if they or any of them have now or should after the date hereof predecease me, or decease before this bequest becomes effective, leaving issue or heirs of his or her body him or her surviving, then to the issue or heirs of their bodies them surviving, the issue or heir to take the share of the deceased parent; and should said deceased brother and/or sister demise without leaving issue or heir of his or her body him or her surviving, then the share of the one so deceased shall go to his or her brothers and/or sisters him or her surviving, and/or the issue or heirs of their bodies, share and share alike, the issue of a deceased taking the share of the deceased parent."

By Item VI of the will, Belle and Bess Dickinson were appointed executrices of the estate, or the survivor of either of them executrix.

The relation of a life tenant to his remaindermen is that of a quasi trustee. The relation is the same if a power of disposal is annexed to the life estate. See Attebery v. Prentice, *supra.*

We believe the first proposition to dispose of is the contention made by the plaintiff that the life tenants became the absolute owners of the Hansen land, and the proceeds of the sale should go to the surviving life tenants' estate, the estate of Bess Dickinson. In this connection, the plaintiff asserts that on February 27, 1931, the Hansen note and mortgage, an asset of the estate of W. Q. Dickinson, was assigned by Belle and Bess Dickinson, executrices of the estate, to them as joint tenants and not as tenants in common, for and during the terms of their natural lives, or the survivor of them or either of them; that on May 6, 1933, the land was conveyed to them in lieu of the mortgage by warranty deed for a consideration of $19,550; that the amount due the life tenants for advances made by them to pay the debts of the estate and for their support was more than the amount due on the Hansen note and mortgage, and the life tenants took the Hansen land as

payment for such advances; that the absolute ownership of this property by Bess Dickinson was recognized and decreed by the county court of Seward County, Nebraska, in its final decree dated March 26, 1943, which is a final judgment adjudicating that Bess Dickinson was the owner of the land heretofore described and that no other person had any interest therein; and that no appeal was taken from said decree, and by reason of said decree cross-petitioners are barred from asserting any right, title, or interest in and to said real estate or the proceeds of the sale thereof.

We deem the following applicable to the plaintiff's contention above stated.

Olson v. Weber, 194 Iowa 512, 187 N. W. 465, 27 A. L. R. 1370, posed the question: Does a life tenant, who sells the devised property or changes its form pursuant to a power to do so, invest himself with a greater title to the newly acquired property than he formerly had to the specific property devised? In answer to this question the court said: "Under our decisions no difficulty arises in making answer on this phase of the case. A change in the form of the estate under the power expressly given in the will does not have the effect to enlarge or change the nature of the original title thereto. In re Estate of Beatty, 172 Iowa 714, 715; Spaan v. Anderson, 115 Iowa 121. See, also Barton v. Barton, 283 Ill. 338. This is the weight of authority rule and is supported on principle and reason. The will of the testator could easily be defeated by the life tenant if by the mere fact of sale such tenant could enlarge a life estate into a fee. A court would necessarily protect the remainderman in order to effectuate the intent of the testator."

In Merrill v. Pardun, 125 Neb. 701, 251 N. W. 834, the plaintiff sought to enforce a trust upon personal property passing by the will of her deceased father. She was the only child, and the issue of his first marriage. After the death of his first wife, he remarried. The

defendants were the residuary legatees and devisees and sisters and children of deceased sisters of the second wife, Margaret L. Brown. Under her husband's will, he bequeathed to her the rest, residue, and remainder of his property wherever situated, to be hers absolutely, and it was his request that any property remaining on the death of his wife should go to his daughter, Mildred I. Merrill, plaintiff, to be hers absolutely, and in case of her prior death, then to her children, share and share alike. The estate was closed in the county court and the personal estate was turned over to the testator's widow. The county court found in its final decree that by the terms of the will all of the property the testator owned at the time of his death went to his widow as sole devisee. The widow died in 1929, leaving a will which was duly probated, by the terms of which she gave her step-daughter, Mildred I. Merrill, $1,000, and the remainder of her estate to other heirs and devisees named therein. The district court dismissed the plaintiff's petition, finding that it did not have jurisdiction by reason of the decree or settlement of final account in the administration proceedings in the estate of the husband by the county court. This court held that the district court was not bound or estopped by the order of the county court entered in the estate of the husband assigning all his property to his widow as sole legatee. This court said that the county court could not determine the rights of the legatees as between themselves, the county court having no authority to bind legatees by construction where the executrix could assign property without construction of a will and did not request construction. The court further found that under the terms of the will of the husband, his widow was entitled to a life estate only in his property, with power to dispose of and use the principal so far as the same might be necessary for her support, comfort, and enjoyment; and that so much of the property remaining at the time of her death should

go to his daughter, Mildred I. Merrill, to be hers absolutely. The court said, with reference to the finding that the court had no jurisdiction by reason of the decree and settlement of the final account in the estate of the father and husband: "It is settled in Nebraska that a district court has jurisdiction of a suit in equity for relief, based upon a breach of a constructive trust, even though the granting of such relief involves the interpretation of a will which has been admitted to probate."

The case is similar to the instant case. In the cited case the opinion does not disclose that the plaintiff filed any claim against the estate of Margaret L. Brown, deceased, as a remainderman under her father's will. This case disposes of the plaintiff's contention that the final decree in the Belle Dickinson estate, entered by the county court of Seward County, Nebraska, to the effect that Belle Dickinson was the owner of an undivided one-half interest in fee simple in the real estate, and that the same descended to Bess Dickinson, and that no other person or persons have any interest therein, is binding on the defendant cross-petitioners in the instant case.

In Edds v. Mitchell, 143 Tex. 307, 184 S. W. 2d 823, we find the following language which is applicable here: "The testator intends that the first taker shall have only a life estate in the property constituting his, the testator's estate, but that the life tenant shall have unlimited power to dispose of the fee; and he intends that so much of the property of his, the testator's, estate as has not been disposed of at the time of the life tenant's death shall pass to the person named in the will as remainderman. * * * If it were held that the exercise of the power of sale by the life tenant operated to divest the remainderman of all title or right to the proceeds of the sale, then the life tenant, merely by selling the property in which he has a life estate, thus changing the form of what came from the testator, could

in effect enlarge his estate into a fee, cut off the remainderman, and defeat the testator's intention. These conclusions are supported by many authorities and we have found none to the contrary. Olson v. Weber, 194 Iowa 512, 187 N. W. 465, 27 A. L. R. 1370; McCormick v. McCormick, (Ky.) 121 S. W. 450; Struck v. Lilly 219 Ky. 604, 293 S. W. 153; Henninger v Henninger, 202 Pa. 207, 51 Atl. 749; Walker v. Pritchard, 121 Ill. 221, 12 N. E. 336; Keniston v. Mayhew, 169 Mass. 166, 47 N. E. 612; Redman v. Barger, 118 Mo. 568, 24 S. W. 177; Smith v. Cain, 187 Ala. 174, 65 So. 367; Note 7 A. & E. Ann. Cas. pp. 953, 956; 3 Page on Wills, pp. 384-385, Sec. 1122." To like effect see Adams v. Prather, 176 Cal. 33, 167 P. 534.

As said in Grace v. Perry, 197 Mo. 550, 95 S. W. 875, 7 Ann. Cas. 948: "It must be remembered that the devise is express for life with power to dispose of the fee, and it is a well-settled principle of law that a power or disposition added to a life estate is not repugnant to the life estate or to the remainder over."

When a life estate is expressly created by will and unlimited power of disposition given to the life tenant, with remainder over in whatever part of the estate remains undisposed of at the time of the death of the life tenant, the proceeds of sale made by the life tenant, undisposed of at the time of his death, pass to the remainderman. By this construction of a will containing such provisions, full effect is given to the testator's intention. See Edds v. Mitchell, *supra*. The plaintiff's contention cannot prevail.

The plaintiff contends that in the event the life tenants did not take the Hansen land for advances made by them to pay debts of the W. Q. Dickinson estate and for their support during their lifetimes, they were entitled to reimbursement from the proceeds of the sale of such land in the hands of plaintiff, and the same should go to the estate of Bess Dickinson, deceased, and be distributed under the terms of her will.

The general rule is stated in 33 Am. Jur., Life Estates, Remainders, Etc., § 461, p. 997, as follows: "The rule is well settled that by paying off a lien, mortgage, charge, or other encumbrance against the property of an estate, a life tenant acquires a lien on the share of the property belonging to the owner or owners of a future interest therein * * *." There are Nebraska authorities to the same effect, and the rule is conceded to be correct by the defendant cross-petitioners.

The plaintiff makes reference to the accountant's evidence and asserts that it discloses that the life tenants received the assets of the W. Q. Dickinson estate subject to their claim for $7,396.05. They later advanced $6,000 to pay mortgages on some properties owned by the testator. Among the assets of the estate was a half section of land in Seward County, Nebraska, subject to a mortgage of $12,000 payable to a bank. It appears that during the course of the mortgage the life tenants paid $6,000 on the principal of the mortgage. The land was sold for $18,000, and the purchaser assumed the $6,000 remaining unpaid on the mortgage. The expenses of sale amounted to $76.80. The net proceeds of the sale was $11,923.20 which was retained by Bess Dickinson when the land was sold in February 1949. So, having advanced $6,000 on the principal of the mortgage for which the life tenants had not been repaid, it is obvious that the net proceeds of the sale which Bess Dickinson received would be $5,923.20. In addition there was a note in the amount of $4,250, an asset of the estate, which was paid, and the life tenants had the benefit of this amount. It is apparent from the plaintiff's figures that the life tenants had advanced $7,396.05 of their own funds to pay debts of the estate. Adding the amounts of $5,923.20 and $4,250, would make a total of $10,173.20, which is more than the $7,396.05 which the plaintiff claims was advanced by Belle Dickinson and Bess Dickinson to the estate of W. Q. Dickinson, deceased.

It is conceded by the plaintiff that the surviving life

tenant received the full amount in cash in payment of the advances made by the life tenants for the benefit of the estate, but plaintiff contends that there is no evidence to show that any such amounts were used for the support of the life tenants.

The accountant's figures show interest at 6 percent from 1927 until March 18, 1954, on the amounts expended by the life tenants over and above the income of the estate for their support and allegedly for other advancements made by them which are not shown with any degree of clarity. Plaintiff contends that the estate of Bess Dickinson, deceased, is entitled to a lien on the proceeds of the sale of the Hansen land in the hands of the plaintiff.

It is apparent that the life tenants received all the income there was from the estate, and repayment of the advances made by them in payment of the debts of the estate. There is nothing in the W. Q. Dickinson will to indicate any charge of interest to be made. It is apparent that the life tenants made no charge of interest during their lifetimes, or claimed interest on any amounts expended by them for the purposes above stated. The charge of interest under the circumstances presented by this record is not a lawful charge and is not allowable.

The plaintiff cites Attebery v. Prentice, *supra,* to the effect that where the life tenant was authorized to sell or convey any part of the real estate or a portion thereof at any time when it might be advantageous or profitable to do so or when it became necessary for her support, it was held that the widow was entitled to support solely from the estate without regard to her own separate means of support. The facts are dissimilar from the instant case. In the instant case the life tenants did not exercise their authority granted by the will to sell the real estate here involved. They might have done so with propriety, if needed for their support. Having not done so, the plaintiff is in no position to claim the assets of the sale of the real estate in behalf of the surviving life

tenant's estate. In other words, the life tenants waived this right and elected to support themselves from the income of the estate and supplement it by their own funds. The plaintiff's contention is not sustainable.

The plaintiff contends that the increase in the value of the property passes to the heirs of the surviving life tenant, the estate of Bess Dickinson, deceased, and said estate is entitled to the profits realized from the sale of the Hansen property under the provisions of Item III of the will of W. Q. Dickinson, deceased. The plaintiff asserts that the Hansen property was acquired in lieu of foreclosure of a mortgage, so it must be assumed that it was worth less than the mortgage which, with interest, amounted to $20,350, therefore the excess realized from the sale of the land above that amount was profit, and under the will belonged to the life tenants.

From a reading of Item III of the will, we believe the words used by the testator, "income and profits," mean one and the same thing, namely, the income. The following is applicable. "It is the general rule that an increase in the value of real estate in an estate belongs to the remainderman or corpus rather than to the life tenant or equitable life beneficiary." 33 Am. Jur., Life Estates, Remainders, Etc., § 340, p. 849. See, also, 33 Am. Jur., Life Estates, Remainders, Etc., § 333, p. 842.

In In re Harned's Estate, 99 N. Y. S. 2d 407, it is said: "It has been repeatedly held that the addition of the word 'profit' to the word 'income' in setting forth the interest of a life beneficiary in a trust does not add to that interest anything beyond the right to the normal yield in the form of earned income." In other words, "profit" and "income" mean the same thing. See, also, In re Vedder's Estate, 17 N. Y. S. 93.

There is no evidence in the instant case that there was any profit from the sale of the land during the lifetime of either of the life tenants. Their interest in the real estate terminated upon their deaths. The plaintiff's contention is without merit.

The plaintiff contends that administraton fees, attorney's fees in the estate proceedings of the Bess Dickinson estate, and the estate costs in the estate proceedings and in this action should be paid from the proceeds of the sale of the real estate in the hands of the plaintiff.

There are two groups of defendants in the instant case. The first group is composed of the residuary devisees and beneficiaries under the will of Bess Dickinson, deceased, and the trustee named in her will. These defendants defaulted and their default was taken and entered. The answering defendants and cross-petitioners were a second set of defendants as previously mentioned, represented by separate counsel than counsel representing the plaintiff and who, for all practical purposes, represents the first group of defendants.

In State ex rel. Ebke v. Board of Educational Lands & Funds, 159 Neb. 79, 65 N. W. 2d 392, this court said: "It is the practice in this state to allow the recovery of attorney's fees and expenses only in such cases as are provided for by statute, or where the uniform course of procedure has been to allow such recovery. See, Blacker v. Kitchen Bros. Hotel Co., 133 Neb. 66, 273 N. W. 836; Higgins v. Case Threshing Machine Co., 95 Neb. 3, 144 N. W. 1037; State ex rel. Charvat v. Sagl, 119 Neb. 374, 229 N. W. 118." See, also, Ehlers v. Campbell, 159 Neb. 328, 66 N. W. 2d 585. We find no statute in this state or uniform course of procedure whereby recovery of attorney's fees and expenses may be allowed in the instant case.

The defendant cross-petitioners cross-appeal, contending that the trial court erred in its decree in finding that the sum of $32,200 received by the plaintiff from the sale of the real estate should be distributed by the plaintiff under the direction of the county court of Seward County, Nebraska, ten-elevenths of said sum to be paid to the defendant cross-petitioners, the remaindermen under the will of W. Q. Dickinson, deceased, and leaving the remaining one-eleventh of said sum to

be retained by the plaintiff for the benefit of the estate of Bess Dickinson, deceased. The cross-petitioners assert that the deed which was taken by Belle Dickinson and Bess Dickinson in satisfaction of the note and mortgage recites a consideration of $19,550; that the amount due on the mortgage was $19,200 principal, and unpaid interest would be $350, which made the consideration as recited in the deed; and that there is no competent evidence to the contrary. In this connection they also contend that under the Uniform Composite Reports as Evidence Act, section 25-12,117, R. S. Supp., 1953, a copy of the report shall be given to the adverse party before trial in order to be admissible in evidence, and that they received no copy at any time prior to trial. The act referred to gives the trial judge discretion to admit such evidence if the trial court finds that no injustice would result from the failure to give such notice. No substantial injustice did result in the instant case from the failure to give such notice. The accountant's report is in conflict with the mortgage and deed. The mortgage was for $19,200 with no prepayment provision, but it was also given to secure a note. The note is not in evidence. The accountant's figures which were accepted by the trial court show that the holders of the note accepted payment which reduced the principal of the debt to $18,500, and by accountant's figures there was $1,850 interest due on the debt, or a total of $20,350. The consideration shown in the Hansen deed is $19,550. There is no evidence that the consideration stated in the deed was the actual amount unpaid on the debt. So, it appears that the consideration named in the deed is less than the amount actually owing on the debt. We believe under the circumstances the trial court was justified in accepting the accountant's figures and holding that the proceeds of the sale in the hands of the plaintiff should be prorated as set forth in the court's decree.

The defendant cross-petitioners make a claim in their brief for interest on the funds in the hands of the plain-

tiff. Their brief does not contain any assignment of error that the trial court failed to require plaintiff to pay interest on the funds in her possession, nor is the question discussed therein.

Under section 25-1919, R. R. S. 1943, and Revised Rules of the Supreme Court, rule 8a 2 (4), consideration of the cause on appeal is limited to errors assigned and discussed, except that the court may, at its option, note a plain error not assigned. See Hartman v. Hartmann, 150 Neb. 565, 35 N. W. 2d 482.

The plaintiff has been holding this fund as an officer of the court until the conflicting claims of the parties could be determined. The claim of the defendant cross-petitioners for interest is without merit.

Upon a trial de novo, we arrive at the same conclusion as the trial court, and the judgment of the trial court should be and is affirmed in all particulars, the plaintiff to pay all costs on appeal.

AFFIRMED.