STATE OF NEBRASKA, APPELLEE, v. LEON E. FELLMAN, APPELLANT.

193 N. W. 2d 775

Filed January 28, 1972. No. 37955.

John J. Powers, for appellant.

Clarence A. H. Meyer, Attorney General, and E. D. Warnsholz, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

SMITH, J.

A dentist, Leon E. Fellman, participated in the Medicaid Program for welfare patients. In that connection an information charged him with obtaining money from the State by false pretenses. A jury found him not guilty on Count I and guilty on three counts. Fellman appeals. He asserts insufficient evidence to prove criminal intent and error in admission of evidence concerning his other Medicaid transactions.

The program theoretically followed these general lines. An indigent desiring dental treatment informed a county caseworker who referred him to his dentist. After examination the dentist filled out a report form stating his recommendations and checking a fee schedule. The county forwarded a report with estimated fees of $250 or more to the State for authorization. After receiving authority, the county forwarded the certified report together with a claim form to the dentist. On the claim form the dentist stated completion of services on a designated date and the amount of his claim. It was paid by a State warrant.

The Douglas County welfare division, suspecting irregularities, requested assistance of the local dental society early in 1969. The society's president appointed a committee of three dentists to work with Hubert J. Wegener, D.D.S., and chief of the local dental health department. After some investigation the committee

was replaced by the society's ethics committee which was composed of other dentists.

Approximately 165 dentists were participating in the program. Committee examinations represented a random sample of possibly irregular cases of 100 dentists. Wegener in reviewing the examinations did not find excessive discrepancies overall.

Wegener or Frederick A. Breeze, D.D.S., and chairman of the ethics committee, examined the four patients named in the counts that went to the jury: Roosevelt Collier, Count I; and Marie Mendenhall, Deanna Wiksell Glessman, and Janet Bandy, Counts II, III, and IV.

The State in 1967 and early 1968 paid Fellman's claims for services rendered Marie, Deanna, and Janet. Fellman in fact had not rendered some of the services. Discrepancies still existed in 1969 when the investigation began.

Irene Richter testified as follows. Dental secretary of Fellman since 1959, she had been handling all paper work, filling out forms, and transcribing his notes for reports. When she laid forms on his desk for signature, she knew that some claims included unperformed services. The State limited performance time to 90 days, and obtaining extensions would increase her paper work. She believed that Fellman would complete the work.

Janet refused to return to Fellman because she had no confidence in him. Deanna consulted another dentist because her girl friend was his patient. Collier failed to return for a partial denture that Fellman had ordered, received, and paid for in due course.

Marie testified to a conversation with Fellman on her last visit: "He told me . . . that he was in a lot of trouble over this and would I tell them anything to get them off of his back. . . . He had told me to tell, couldn't I tell them that the teeth were there in May and I just didn't pick them up."

Fellman, age 62, testified as follows. The foregoing testimony of Marie was false. His practice had been

heavy, and the number of welfare patients had exceeded his original estimate. He relied on Irene: "Q. You have heard . . . (Irene) testify . . . to her putting forms on your desk for your signature . . .? A. Yes. Q. Was that the custom at the time? A. Yes. Q. You did sign this claim form for the dentures (for Marie) when actually the work had not been done . . .? A. Yes, sir. Q. Did you realize it at the time . . .? A. I don't know whether I did or didn't . . .. I should have realized it . . .." At no time did he intend to cheat or defraud the State.

Evidence is sufficient to sustain a verdict of guilty in a criminal prosecution only when the jury could properly find guilt beyond a reasonable doubt. State v. Leary, 185 Neb. 76, 173 N. W. 2d 520 (1970). Criminal intent of Fellman was an issue for the jury.

The evidentiary questions arose during the testimony of Breeze, a witness for the prosecution, as follows. Each member of the ethics committee examined only part of the cases. On recross-examination counsel elicited this repetitive answer: The ethics committee, conducting no general investigation, had only investigated Fellman and two other dentists.

On subsequent redirect examination Breeze testified: "Q. . . . how many patients of Dr. Fellman did your committee or you examine? . . . (Objections) BY THE COURT: Overruled. You opened it up. A. 56. Q. 56? A. Yes. Q. Of those patients . . . did you arrive at a percentage of discrepancies between the amount of work billed for and the amount of work the dentist did? . . . (Objections) BY THE COURT: . . . We are talking about Dr. Fellman. Limit your question to Dr. Fellman. Q. Did you arrive during the general investigation of Dr. Fellman specifically as to a percentage of discrepancy between the . . . work billed . . . and the . . . work done, from your sample? . . . (Objections overruled) A. The frequency with which we found irregularities that we could not explain away in any fashion was 72 per cent

of the cases we examined. . . . In Dr. Fellman's cases specifically . . .." At the conclusion of Breeze' testimony defense counsel unsuccessfully moved for a mistrial.

The court instructed the jury: "To determine the intent of the defendant in this case, you are to examine all the evidence, facts, and circumstances appearing in the case which may throw any light upon the alleged intent of the defendant."

Prior use of similar inadmissible evidence may be governed by theories of estoppel or waiver of objection in advance. See 1 Wigmore on Evidence, §§ 15 and 18, pp. 304 and 321 (3d Ed., 1940).

The extent to which a witness on redirect examination may explain testimony elicited on cross-examination lies primarily in the discretion of the court. See State v. McClelland, 72 N. D. 665, 10 N. W. 2d 798 (1943). In a criminal prosecution where a State witness testified to hearsay on cross-examination, discretion over objection to permit hearsay on redirect examination is limited. See Karnes v. State, 111 Neb. 435, 196 N. W. 676 (1923) (by implication).

The recross-examination of Breeze opened nothing, but there is a broader ground for decision. The testimony was repetitive, unambiguous, and harmless. It had no tendency to discredit Breeze before the jury or to exonerate Fellman. The prosecution on redirect examination over objections nevertheless stigmatized Fellman with testimony that reeked of incompetency. The rulings on Fellman's objections represented an abuse of discretion.

On Counts II, III, and IV the judgment is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.

NEWTON, J., dissenting.

The majority opinion holds that evidence showing discrepancies in 72 percent of the cases handled by de-

fendant under the Medicaid Program was erroneously admitted.

Defendant was charged with obtaining money by false pretenses, i.e., by submitting false claims for remuneration. The charge is one requiring proof of an "intent to cheat and defraud." The questions eliciting the evidence were objected to as calling for incompetent, immaterial, irrelevant testimony, and for insufficient foundation.

Irregularities in claims submitted for work done under the program were investigated by the Ethics Committee of the Omaha District Dental Society of which the witness was chairman. There were six members of the committee participating in the investigation. Three worked on Wednesday and three on Thursday. Patients were examined and dental work found compared with defendant's reports of work done. Statements were signed as to irregularities present or absent in each case. The witness did not personally check each patient or report. On completion of the review, defendant was present for a session with the committee and another review of his patients. It appears defendant was kept fully apprised of the work of the committee and of its findings. He knew or could readily ascertain the nature of the claims he had signed and submitted. He could ascertain from his own records the work done. Under such circumstances, findings of the committee regarding irregularities and the extent of them could not have taken him by surprise.

The defendant claimed that the irregularities with which he was charged, six in number, resulted from mistake and that he had no intent to cheat or defraud. Under the circumstances, evidence of other similar offenses was certainly relevant and material on the question of intent. See, State v. Kirby, 185 Neb. 240, 175 N. W. 2d 87; State v. Mayes, 183 Neb. 165, 159 N. W. 2d 203. Was it hearsay and consequently incompetent as held in the majority opinion? The hearsay rule has many

exceptions and the present trend appears to be to narrow the operation of the rule. One evidence of this is the Uniform Composite Reports As Evidence Act. See, §§ 25-12,115 to 25-12,119, R. R. S. 1943. The act provides that any written report *or finding of facts* prepared by a distinterested expert containing conclusions resulting wholly *or partly* from written information furnished by the cooperation of several persons acting for a common purpose shall be admissible when testified to by one of the persons making such report or finding, if, in the opinion of the court, no substantial injustice will be done the opposite party. Here the evidence is based on reports made by members of a disinterested committee acting for a common purpose. The result was testified to by one of the committee members, its chairman, who, in such capacity, was necessarily in charge of the work done.

The act provides broadly for cross-examination of all persons involved in the making of the report or finding. It further provides that notice must be given before trial of the intention to use such report or finding. No such notice was given in the present case, but this requirement is qualified by the following language: "* * * except that it may be admitted if the trial court finds that no substantial injustice would result from the failure to give such notice."

The evidence is obviously reliable which nullifies, in this case, the principal evil inherent in hearsay evidence. The right of a full cross-examination is preserved by the act. The defendant was fully aware of the nature of the reports and findings by virtue of records available to him and of having reviewed them with the committee. Under such circumstances, no substantial injustice could result to the defendant by the waiver of notice and the admission of this evidence other than that it was simply additional evidence of guilt. Trute v. Skeede, 162 Neb. 266, 75 N. W. 2d 672, in referring to the act stated: "The act referred to gives the trial judge discretion to admit

such evidence if the trial court finds that no injustice would result from the failure to give such notice."

Although no cautionary instruction limiting this evidence to the question of intent was given, none was requested and assignments of error do not refer to this proposition. In any event, such instruction is not required in the absence of a request for it. See, Osborne v. State, 115 Neb. 65, 211 N. W. 179; 23A C. J. S., Criminal Law, § 1325 (5), p. 843.

The questioned evidence was properly admitted and I would affirm the judgment of the trial court.

WHITE, C. J., and CLINTON, J., join in this dissent.